# Exhibit "C"

IN THE CIRCUIT COURT OF THE SIXTEENTH JUDICIAL CIRCUIT
IN AND FOR MONROE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO:

SRINIVASRAO ALAPARTHI, as Personal
Representative of the Estate of SUPRAJA
ALAPARTHI, deceased, SRINIVASRAO ALAPARTHI,
as parent and natural guardian of Ak.A, a minor child, and
RAVIKUMAR SADDA and ASRITHA RAVALA, as
parent and natural guardian of V.S., a minor child,

            Plaintiffs,

vs.

DANIEL D. COUCH, an individual, TANNER HELMERS,
an individual, and CAPTAIN PIP'S HOLDINGS, LLC, a Florida
limited liability company,

            Defendants,

_____/

## COMPLAINT

      COMES NOW the Plaintiffs, SRINIVASRAO ALAPARTHI, as Personal Representative

of the Estate of SUPRAJA ALAPARTHI, deceased, SRINIVASRAO ALAPARTHI, as parent

and natural guardian of Ak.A, a minor child, and RAVIKUMAR SADDA and ASRITHA

RAVALA, as parents and natural guardians of V.S., a minor child, by and through undersigned

counsel, and hereby sues the Defendants, DANIEL D. COUCH, an individual, TANNER

HELMERS, an individual, and CAPTAIN PIP'S HOLDINGS, LLC, a Florida limited liability

company, and alleges as follows:

## ALLEGATIONS AS TO ALL COUNTS

1.      This is an action for damages in excess of Fifty Thousand Dollars exclusive of interest,

        costs, and attorney's fees. One of the claims asserted herein are brought pursuant to

        Florida's Wrongful Death Act, Fla. Stat. § 768.16, *et seq.*

2.      On May 30, 2022, the Plaintiff's Decedent, SUPRAJA ALAPARTHI, and her minor son,

Ak.A, and her nephew, V.S., who are both claimants in this case, took a parasail ride aboard the *M/V Airborne*, a vessel owned by non-party Lighthouse Parasail, Inc. Due to inclement weather, the crew lost control of the parasail, which eventually resulted in Plaintiff's Decedent's death, and injuries to both Ak.A and V.S.

## The Parties

3.     The Plaintiff, SRINIVASRAO ALAPARTHI, is (or will be) the duly appointed, qualified acting Personal Representative of the Estate of SUPRAJA ALAPARTHI, and is the proper individual and party to bring this action.

4.     The Plaintiff's decedent's three survivors under Florida's Wrongful Death Act, Fla. Stat. § 768.16, *et seq*. are SRINIVASRAO ALAPARTHI, who is the Plaintiff's decedent's surviving husband (and the Personal Representative of her Estate), and Ak.A and Ad.A, who are the Plaintiff's decedent's two surviving minor children.

5.     The Plaintiff, SRINIVASRAO ALAPARTHI, is also the natural father and guardian of Ak.A., a minor child, is *sui juris* and is the proper party to bring this action on his son's behalf.

6.     The Plaintiffs, RAVIKUMAR SADDA and ASRITHA RAVALA, are the natural parents and guardians of V.S., a minor child, are *sui juris* and are the proper parties to bring this action on his behalf.

7.     At all material times, Defendant DANIEL D. COUCH, was a Florida resident with an address of 213 Anglers Drive S, Apt. 1, Marathon, Florida 33050.

8.     At all material times, Defendant DANIEL D. COUCH was a crew member and captain aboard the subject vessel, the *M/V Airborne*, and was employed or contracted by Lighthouse Parasail, Inc., and/or Defendant CAPTAIN PIP'S HOLDINGS, LLC, to provide transportation of passengers and parasail rides aboard the vessel. Moreover,

Defendant DANIEL D. COUCH, supervised, planned, ordered, operated and controlled the subject parasail ride.

9.    At all material times, Defendant TANNER HELMERS, was a Florida resident with an address of 213 Anglers Drive S, Apt. 1, Marathon, Florida 33050.

10.   At all material times, Defendant TANNER HELMERS was a crew member and mate aboard the subject vessel, the *M/V Airborne*, and was employed or contracted by Lighthouse Parasail, Inc., and/or Defendant CAPTAIN PIP'S HOLDINGS, LLC, to provide transportation of passengers and parasail rides aboard the vessel. Moreover, Defendant TANNER HELMERS, supervised, planned, ordered, operated and controlled the subject parasail ride.

11.   At all material times, the Defendant, CAPTAIN PIP'S HOLDINGS, LLC, was authorized to and doing business as a Florida corporation with a principal address of 1480 OVERSEAS HIGHWAY, MARATHON, FLORIDA 33050.

12.   At all material times, the Defendant, CAPTAIN PIP'S HOLDINGS, LLC, owned, operated, managed, maintained, or controlled a marina and resort commonly known as "Captain Pip's Marina and Hideaway", which was located at 1480 Overseas Hwy, Marathon, Florida 33050.

13.   At all material times, the Defendant, CAPTAIN PIP'S HOLDINGS, LLC, operated, controlled, and/or sold various watersports activities that were based out of its marina and resort. This included, but was not limited to, parasailing rides, snorkeling, boat and jet ski rentals, and fishing charters. These activities were operated, controlled, and/or sold either directly by the Defendant, CAPTAIN PIP'S HOLDINGS, LLC, or through partnerships or joint ventures with other individuals or entities, including Lighthouse Parasail, Inc., which owned, operated, and/or controlled the vessel, the *M/V Airborne*. In the alternative,

3

Defendant CAPTAIN PIP'S HOLDINGS, LLC held itself out to be in partnership or a joint venture with these entities or individuals.

14.    At all material times, the Defendant, CAPTAIN PIP'S HOLDINGS, LLC, marketed, advertised, and/or sold various water sports activities, including but not limited to parasailing rides, snorkeling, boat and jet ski rentals, and fishing charters, throughout the Florida Keys and on the internet (including both through its own website and through social media accounts). In addition to its own website and social media accounts, the Defendant, CAPTAIN PIP'S HOLDINGS, LLC, marketed, advertised, and sold its marina, resort, and aforementioned watersports activities through partners or joint ventures, including Lighthouse Parasail, Inc.

15.    At all material times, Lighthouse Parasail, Inc., and Defendants DANIEL D. COUCH and TANNER HELMERS served as Defendant CAPTAIN PIP'S HOLDINGS, LLC's agents (actual or apparent).

**General Facts**

16.    In May 2022, SUPRAJA ALAPARTHI, along with her husband, two children and several other family members traveled from Illinois (where they resided) to Florida for vacation. As part of their Florida vacation, they traveled to the Florida Keys.

17.    Upon information and belief, on May 30, 2022, while in the Florida Keys, the family was provided a brochure that included an advertisement and coupon for Lighthouse Parasail Inc.'s parasailing rides. In addition to obtaining information about Lighthouse Parasail, Inc., from the brochure, the family found and researched Lighthouse Parasail, Inc., on the internet – both on its own website and on the Defendant, CAPTAIN PIP'S HOLDINGS, LLC, website.

18.    Subsequently, the family contacted Lighthouse Parasail, Inc. and/or the Defendant,

CAPTAIN PIP'S HOLDINGS, LLC, and booked parasailing activities for later that same afternoon.

19. Upon reserving the parasailing activities for later that afternoon, they were told to go to marina and resort owned and operating the Defendant, CAPTAIN PIP'S HOLDINGS, LLC, which is where the subject vessel, the *M/V Airborne*, was based and launched from. In fact, as they approached the marina and resort, they saw a large sign for "Captain Pip's Marina & Hideaway", advertising the marina and resort, hotel room, bike rentals, as well as other watersports activities, including boat rentals, kayaks, paddle boards, jet ski rentals, *and parasailing.*

20. Upon arrival at the marina and resort owned and operated by the Defendant, CAPTAIN PIP'S HOLDINGS, LLC, the family paid for 8 family members to "fly" in the parasail while 4 other family members planned to be on the vessel as "observers" without actually engaging in the parasailing activities. After paying for the parasailing rides and voyage, the family boarded the vessel the *M/V Airborne* late in the afternoon to begin their parasailing trip.

21. Upon information and belief, prior to boarding the *M/V Airborne* weather reports or radars indicated a storm would be entering the area where the *M/V Airborne* typically operated. Upon boarding the *M/V Airborne*, the weather conditions began to quickly deteriorate as that storm blew into the area. The conditions continued to deteriorate throughout the voyage.

22. Despite the deteriorating conditions (which included strong winds, gusting winds, and rough seas), the crew aboard the *M/V Airborne* (the Defendants DANIEL COUCH and TANNER HELMERS, the Defendant, CAPTAIN PIP'S HOLDINGS, LLC, and non-party Lighthouse Parasail, Inc., continued with the planned voyage and did not cancel the trip.

23. Three family members completed the first three-person parasail ride without incident, but the weather continued to deteriorate.

24. After the first parasail ride was completed, the Plaintiff's decedent, SUPRAJA ALAPARTHI, her son, Ak.A., a minor child, and her nephew, V.S., a minor child, began their three-person parasail ride.

25. While in the air, the crew of the *M/V Airborne* lost control of the parasail due to, among other things, the poor weather conditions, which included strong and gusting winds. The victims, who were harnessed and attached to the parasail, began to sway violently back and forth and the parasail began to affect the crew's ability to maneuver the vessel. Upon losing control of the parasail and the vessel, the crew cut the towline that connected the parasail to the *M/V Airborne*.

26. The parasail, which was now untethered and being blown by the gusting winds, dragged the victims across the water until they collided with a bridge.

27. The Plaintiff's decedent, SUPRAJA ALAPARTHI, sustained severe injuries resulting in her death. Ak.A., a minor child, sustained severe and permanent injuries, and V.S., a minor child, sustained severe and permanent injuries.

28. Venue is proper in this Court because, *inter alia*, the incident giving rise to the claims within this Complaint occurred within Monroe County, Florida.

## COUNT I

*The Plaintiff SRINIVASRAO ALAPARTHI, as Personal Representative of the Estate of SUPRAJA ALAPARTHI, deceased, claim of Negligence Against the Defendant DANIEL COUCH.*

29. Plaintiff readopts and realleges all allegations contained in Paragraphs 1 –28.

30. At all material times, the Defendant DANIEL COUCH had a duty to exercise reasonable care for the safety of passengers, including Plaintiff's decedent, SUPRAJA ALAPARTHI.

In addition, at all material times, Defendant DANIEL COUCH undertook the duty and responsibility to supervise and exercise reasonable care over Plaintiff's decedent, SUPRAJA ALAPARTHI, during and after the subject parasail ride.

31. At all material times, Defendant DANIEL COUCH breached his duties to Plaintiff's decedent, SUPRAJA ALAPARTHI, by the following actions and omissions:

A.   Failing to check the weather incoming prior to departing on the parasailing voyage;

B.   Failing to appreciate the changing whether conditions during the parasailing voyage;

C.   Continuing with parasailing activities after it became apparent that it was unsafe to do so;

D.   Failing to take reasonable actions to safely bring down the parasail and rescue the Plaintiffs after losing control of it (including, but not limited to, cutting the tow line);

E.   Failing to have proper safety equipment aboard the vessel;

F.   Failing to reasonably and properly respond to an emergency situation;

G.   Failing to radio or contact the United States Coast Guard or other agencies that could have assisted in recovering the Plaintiffs prior to them becoming fatally and catastrophically injured;

H.   Failing to properly instruct the Plaintiffs prior to engaging in parasailing activities on actions to take in the event of an emergency;

I.   Failing to have proper training prior to captaining a parasailing vessel;

J.   Failing to implement reasonable and proper safety policies and procedures for its passengers and parasailers (or failing to instruct its crew of the same);

K.   Operating while exceeding the capacity rating for the *M/V Airborne*;

L.   Cutting the towline that connected the parasail to the *M/V Airborne*;

M.   Failing to warn its passengers and parasailers of the risks of parasailing, especially of the risks of parasailing during poor or deteriorating weather conditions;

N.   Allowing its passengers and parasailers to parasail without first determining their skill level and familiarity with parasailing, without instructing its

passengers and parasailers on how to release themselves from the parasail equipment in emergency situations, and without warning its passengers and parasailers of the risks associated with parasailing in inclement weather; and

O.   Violating Florida Statues, Section 327.375(3) by failing to carry a United States Coast Guard license aboard the vessel;

P.   Violating Florida Statues, Section 327.375(4) by failing to have a functional VHF marine transceiver and a separate electronic device capable of providing access to National Weather Service forecasts and current weather conditions;

Q.   Violating Florida Statutes, Section 327.375(5) by failing to cease parasailing activities when sustained wind speeds of more than 20 mph, wind gusts of 15 mph high than sustained wind speeds, or wind speed gusts exceeding 25 mph entered the area of operation;

R.   Other acts of negligence not yet discovered.

32.   As a direct and proximate cause of Defendant DANIEL COUCH's negligence and extreme recklessness, the Plaintiff's decedent, SUPRAJA ALAPARTHI, was killed.

33.   The ESTATE OF SUPRAJA ALAPARTHI and the Plaintiff's decedent's surviving spouse and two surviving minor children have suffered and will continue to suffer damages into the future. As a result, the Plaintiff, SRINIVASRAO ALAPARTHI, as Personal Representative of the Estate of SUPRAJA ALAPARTHI, deceased, seeks to recover all damages allowed under Florida's Wrongful Death Act, Fla. Stat. § 768.16, *et seq.*, and include the following:

A.   The past and future pain and suffering of the Plaintiff's decedent's survivors;

B.   The past and future costs of therapy and mental health treatment for the Plaintiff's decedent's survivors;

C.   Loss of the care, maintenance, support, services, companionship, advice, counsel, inheritance and other reasonable contributions of pecuniary and non-pecuniary value that the Plaintiff's decedent's survivors would have other received during the Plaintiff's decedent's life had it not been for his untimely, tragic and wrongful death;

D.   The expense of funeral arrangements arising from the injury and death of

8

the Plaintiff's decedent;

E.  The prospective net accumulations of the Estate of SUPRAJA
    ALAPARTHI; and

F.  Any and all other damages that the applicable law allows.

WHEREFORE, the Plaintiff, SRINIVASRAO ALAPARTHI, as Personal Representative

of the Estate of SUPRAJA ALAPARTHI, deceased, sues the Defendant DANIEL COUCH and

demands judgement against him for damages exclusive of attorneys' fees, costs, and interest, in an

amount in excess of the jurisdictional limits of this Court.

## COUNT II

*The Plaintiff SRINIVASRAO ALAPARTHI, as Personal Representative of the
Estate of SUPRAJA ALAPARTHI, deceased, claim of Negligence per se Against
the Defendant DANIEL COUCH*

34.  Plaintiff readopts and realleges all allegations contained in Paragraphs 1 – 28.

35.  At all material times, the Defendant DANIEL COUCH had a duty to exercise reasonable
     care for the safety of passengers, including Plaintiff's decedent, SUPRAJA ALAPARTHI.
     In addition, at all material times, Defendant DANIEL COUCH undertook the duty and
     responsibility to supervise and exercise reasonable care over Plaintiff's decedent,
     SUPRAJA ALAPARTHI, during and after the subject parasail ride.

36.  Moreover, at all material times, the Defendant DANIEL COUCH had a duty to comply
     and at all times follow applicable Federal and state statutes, regulations, and rules,
     including industry safety standards. This includes Florida Statutes, Section 327.375, which
     governs and regulates parasailing operations conducted in Florida.

37.  At all material times, the Defendant DANIEL COUCH failed to follow these applicable
     Federal and statutes, regulations, rule and safety standards, including but not limited to
     Florida Statutes, Section 327.375. Specifically, with respect to Florida Statutes, Section
     327.375, the Defendant failed to follow and comply with subsections 327.375(3),

327.375(4) and 327.375(5), which provide:

> (3) The operator of a vessel engaged in commercial parasailing must have a current and valid license issued by the United States Coast Guard authorizing the operator to carry passengers for hire. The license must be appropriate for the number of passengers carried and the displacement of the vessel. The license must be carried on the vessel and be available for inspection while engaging in commercial parasailing activities.

> (4)   A vessel engaged in commercial parasailing must be equipped with a functional VHF marine transceiver and a separate electronic device capable of providing access to National Weather Service forecasts and current weather conditions.

> (5)(a)   Commercial parasailing is prohibited if the current observed wind conditions in the area of operation include a sustained wind speed of more than 20 miles per hour; if wind gusts are 15 miles per hour higher than the sustained wind speed; if the wind speed during gusts exceeds 25 miles per hour; if rain or heavy fog results in reduced visibility of less than 0.5 mile; or if a known lightning storm comes within 7 miles of the parasailing area.

> (b)   The operator of the vessel engaged in commercial parasailing shall use all available means to determine prevailing and forecasted weather conditions and record this information in a weather log each time passengers are to be taken out on the water. The weather log must be available for inspection at all times at the operator's place of business.

38.   At all material times, the Plaintiff's decedent, SUPRAJA ALAPARTHI, was a member of a class of person that were intended to be protected by these applicable Federal and state statutes, regulations, rule and safety standards, including but not limited to Florida Statutes, Section 327.375.

39.   As a direct and proximate cause of the Defendant DANIEL COUCH's failure to comply with and follow these applicable Federal and state statutes, regulations, rule and safety standards, including but not limited to Florida Statutes, Section 327.375, the Plaintiff's decedent, SUPRAJA ALAPARTHI, suffered severe injury resulting in her death.

40.   The ESTATE OF SUPRAJA ALAPARTHI and the Plaintiff's decedent's surviving spouse and two surviving minor children, have suffered and will continue to suffer damages into the future. As a result, the Plaintiff, SRINIVASRAO ALAPARTHI, as Personal

Representative of the Estate of SUPRAJA ALAPARTHI, deceased, seeks to recover all damages allowed under Florida's Wrongful Death Act, Fla. Stat. § 768.16, *et seq.*, and include the following:

A. The past and future pain and suffering of the Plaintiff's decedent's survivors;

B. The past and future costs of therapy and mental health treatment for the Plaintiff's decedent's survivors;

C. Loss of the care, maintenance, support, services, companionship, advice, counsel, inheritance and other reasonable contributions of pecuniary and non-pecuniary value the that Plaintiff's decedent's survivors would have other received during the Plaintiff's decedent's life had it not been for his untimely, tragic and wrongful death;

D. The expense of funeral arrangements arising from the injury and death of the Plaintiff's decedent;

E. The prospective net accumulations of the Estate of SUPRAJA ALAPARTHI; and

F. Any and all other damages that the applicable law allows.

WHEREFORE, the Plaintiff, SRINIVASRAO ALAPARTHI, as Personal Representative of the Estate of SUPRAJA ALAPARTHI, deceased, sues the Defendant DANIEL COUCH and demands judgement against him for damages exclusive of attorneys' fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

## COUNT III

*The Plaintiff SRINIVASRAO ALAPARTHI, as parent and natural guardian of Ak.A, a minor child, claim of Negligence Against the Defendant DANIEL COUCH*

41. Plaintiff readopts and realleges all allegations contained in Paragraphs 1 – 28.

42. At all material times, the Defendant DANIEL COUCH had a duty to exercise reasonable care for the safety of passengers, including to Ak.A, a minor child. In addition, at all material times, Defendant DANIEL COUCH undertook the duty and responsibility to

11

supervise and exercise reasonable care over Ak.A, a minor child, during and after the parasailing ride.

43.     At all material times, Defendant DANIEL COUCH breached his duties to Ak.A, a minor child, by the following actions and omissions:

A.      Failing to check the weather incoming prior to departing on the parasailing voyage;

B.      Failing to appreciate the changing whether conditions during the parasailing voyage;

C.      Continuing with parasailing activities after it became apparent that it was unsafe to do so;

D.      Failing to take reasonable actions to safely bring down the parasail and rescue the Plaintiffs after losing control of it (including, but not limited to, cutting the tow line);

E.      Failing to have proper safety equipment aboard the vessel;

F.      Failing to reasonably and properly respond to an emergency situation;

G.      Failing to radio or contact the United States Coast Guard or other agencies that could have assisted in recovering the Plaintiffs prior to them becoming fatally and catastrophically injured;

H.      Failing to properly instruct the Plaintiffs prior to engaging in parasailing activities on actions to take in the event of an emergency;

I.      Failing to have proper training prior to captaining a parasailing vessel;

J.      Failing to implement reasonable and proper safety policies and procedures for its passengers and parasailers (or failing to instruct its crew of the same);

K.      Operating while exceeding the capacity rating for the *M/V Airborne*;

L.      Cutting the towline that connected the parasail to the *M/V Airborne*;

M.      Failing to warn its passengers and parasailers of the risks of parasailing, especially of the risks of parasailing during poor or deteriorating weather conditions;

N.      Allowing its passengers and parasailers to parasail without first determining their skill level and familiarity with parasailing, without instructing its passengers and parasailers on how to release themselves from the parasail equipment in emergency situations, and without warning its passengers and

parasailers of the risks associated with parasailing in inclement weather; and

O.     Violating Florida Statues, Section 327.375(3) by failing to carry a United States Coast Guard license aboard the vessel;

P.     Violating Florida Statues, Section 327.375(4) by failing to have a functional VHF marine transceiver and a separate electronic device capable of providing access to National Weather Service forecasts and current weather conditions;

Q.     Violating Florida Statutes, Section 327.375(5) by failing to cease parasailing activities when sustained wind speeds of more than 20 mph, wind gusts of 15 mph high than sustained wind speeds, or wind speed gusts exceeding 25 mph entered the area of operation;

R.     Other acts of negligence not yet discovered.

44. As a direct and proximate cause of Defendant DANIEL COUCH's negligence and extreme recklessness, Ak.A,, a minor child, suffered severe and permanent injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and aggravation of previously existing conditions. The losses are either permanent or continuing, and Ak.A., a minor child, and will suffer losses into the future.

WHEREFORE, the Plaintiff, SRINIVASRAO ALAPARTHI, as parent and natural guardian of Ak.A, a minor child, sues the Defendant DANIEL COUCH and demands judgement against him for damages exclusive of attorneys' fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

## COUNT IV
*The Plaintiff SRINIVASRAO ALAPARTHI, as parent and natural guardian of Ak.A, a minor child, claim of Negligence per se Against the Defendant DANIEL COUCH.*

45.     Plaintiff readopts and realleges all allegations contained in Paragraphs 1 – 28.

46.     At all material times, the Defendant DANIEL COUCH had a duty to exercise reasonable

care for the safety of passengers, including Ak.A., a minor child. In addition, at all material times, Defendant DANIEL COUCH undertook the duty and responsibility to supervise and exercise reasonable care over Ak.A., a minor child, during and after the subject parasail ride.

47.    Moreover, at all material times, the Defendant DANIEL COUCH had a duty to comply and at all times follow applicable Federal and state statutes, regulations, and rules, including industry safety standards. This includes Florida Statutes, Section 327.375, which governs and regulates parasailing operations conducted in Florida.

48.    At all material times, the Defendant DANIEL COUCH failed to follow these applicable Federal and statutes, regulations, rule and safety standards, including but not limited to Florida Statutes, Section 327.375. Specifically, with respect to Florida Statutes, Section 327.375, the Defendant failed to follow and comply with subsections 327.375(3), 327.375(4) and 327.375(5), which provide:

> (3) The operator of a vessel engaged in commercial parasailing must have a current and valid license issued by the United States Coast Guard authorizing the operator to carry passengers for hire. The license must be appropriate for the number of passengers carried and the displacement of the vessel. The license must be carried on the vessel and be available for inspection while engaging in commercial parasailing activities.
>
> (4)   A vessel engaged in commercial parasailing must be equipped with a functional VHF marine transceiver and a separate electronic device capable of providing access to National Weather Service forecasts and current weather conditions.
>
> (5)(a)   Commercial parasailing is prohibited if the current observed wind conditions in the area of operation include a sustained wind speed of more than 20 miles per hour; if wind gusts are 15 miles per hour higher than the sustained wind speed; if the wind speed during gusts exceeds 25 miles per hour; if rain or heavy fog results in reduced visibility of less than 0.5 mile; or if a known lightning storm comes within 7 miles of the parasailing area.
>
> (b)   The operator of the vessel engaged in commercial parasailing shall use all available means to determine prevailing and forecasted weather conditions and record this information in a weather log each time passengers

are to be taken out on the water. The weather log must be available for inspection at all times at the operator's place of business.

49.     At all material times, Ak.A., a minor child, was a member of a class of person that were intended to be protected by these applicable Federal and state statutes, regulations, rule and safety standards, including but not limited to Florida Statutes, Section 327.375.

50.     As a direct and proximate cause of the Defendant DANIEL COUCH's failure to comply with and follow these applicable Federal and state statutes, regulations, rule and safety standards, including but not limited to Florida Statutes, Section 327.375, Ak.A., a minor child, suffered severe injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and aggravation of previously existing conditions. The losses are either permanent or continuing, and Ak.A., a minor child, suffered severe and permanent injury, and will suffer losses into the future.

WHEREFORE, the Plaintiff, SRINIVASRAO ALAPARTHI, as parent and natural guardian of Ak.A, a minor child, sues the Defendant DANIEL COUCH and demands judgement against him for damages exclusive of attorneys' fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

## COUNT V

*The Plaintiff SRINIVASRAO ALAPARTHI, as parent and natural guardian of Ak.A, a minor child, claim of Negligent Infliction of Emotional Distress Against the Defendant DANIEL COUCH*

51.     Plaintiff readopts and realleges all allegations contained in Paragraphs 1 – 28.

52.     At all material times, the Defendant DANIEL COUCH had a duty to exercise reasonable care for the safety of passengers, including to Ak.A, a minor child, and his mother, Supraja Alaparthi. In addition, at all material times, Defendant DANIEL COUCH undertook the

duty and responsibility to supervise and exercise reasonable care over Ak.A, a minor child, and his mother, Supraja Alaparthi, during and after the parasailing ride.

53.     At all material times, Defendant DANIEL COUCH breached his duties by the following actions and omissions:

A.     Failing to check the weather incoming prior to departing on the parasailing voyage;

B.     Failing to appreciate the changing whether conditions during the parasailing voyage;

C.     Continuing with parasailing activities after it became apparent that it was unsafe to do so;

D.     Failing to take reasonable actions to safely bring down the parasail and rescue the Plaintiffs after losing control of it (including, but not limited to, cutting the tow line);

E.     Failing to have proper safety equipment aboard the vessel;

F.     Failing to reasonably and properly respond to an emergency situation;

G.     Failing to radio or contact the United States Coast Guard or other agencies that could have assisted in recovering the Plaintiffs prior to them becoming fatally and catastrophically injured;

H.     Failing to properly instruct the Plaintiffs prior to engaging in parasailing activities on actions to take in the event of an emergency;

I.     Failing to have proper training prior to captaining a parasailing vessel;

J.     Failing to implement reasonable and proper safety policies and procedures for its passengers and parasailers (or failing to instruct its crew of the same);

K.     Operating while exceeding the capacity rating for the *M/V Airborne*;

L.     Cutting the towline that connected the parasail to the *M/V Airborne*;

M.     Failing to warn its passengers and parasailers of the risks of parasailing, especially of the risks of parasailing during poor or deteriorating weather conditions;

N.     Allowing its passengers and parasailers to parasail without first determining their skill level and familiarity with parasailing, without instructing its passengers and parasailers on how to release themselves from the parasail equipment in emergency situations, and without warning its passengers and

parasailers of the risks associated with parasailing in inclement weather; and

O.    Violating Florida Statues, Section 327.375(3) by failing to carry a United States Coast Guard license aboard the vessel;

P.    Violating Florida Statues, Section 327.375(4) by failing to have a functional VHF marine transceiver and a separate electronic device capable of providing access to National Weather Service forecasts and current weather conditions;

Q.    Violating Florida Statutes, Section 327.375(5) by failing to cease parasailing activities when sustained wind speeds of more than 20 mph, wind gusts of 15 mph high than sustained wind speeds, or wind speed gusts exceeding 25 mph entered the area of operation;

R.    Other acts of negligence not yet discovered.

54.    As a direct and proximate cause of Defendant DANIEL COUCH's negligence and extreme recklessness, Ak.A, a minor child, suffered severe and permanent injury. In addition, as a direct and proximate cause of the Defendant DANIEL COUCH's negligence and extreme recklessness, Ak.A., a minor child, witnessed his mother, SUPRAJA ALAPARTHI, suffer severe injury resulting in her death and witnessed his mother's lifeless body hanging from the bridge upon impact, which alone and in combination with his own physical injury, resulted in severe and continuing emotional distress to Ak.A., a minor child.

WHEREFORE, the Plaintiff, SRINIVASRAO ALAPARTHI, as parent and natural guardian of Ak.A, a minor child, sues the Defendant DANIEL COUCH and demands judgement against him for damages exclusive of attorneys' fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

## COUNT VI

*The Plaintiffs RAVIKUMAR SADDA and ASRITHA RAVALA, as parents and natural guardians of V.S., a minor child, claim of Negligence Against the Defendant DANIEL COUCH*

55.    Plaintiff readopts and realleges all allegations contained in Paragraphs 1 – 28.

56.    At all material times, the Defendant DANIEL COUCH had a duty to exercise reasonable

care for the safety of passengers, including to V.S., a minor child. In addition, at all material times, Defendant DANIEL COUCH undertook the duty and responsibility to supervise and exercise reasonable care over V.S., a minor child, during and after the parasailing ride.

57.   At all material times, Defendant DANIEL COUCH breached his duties to V.S., a minor child, by the following actions and omissions:

A.   Failing to check the weather incoming prior to departing on the parasailing voyage;

B.   Failing to appreciate the changing whether conditions during the parasailing voyage;

C.   Continuing with parasailing activities after it became apparent that it was unsafe to do so;

D.   Failing to take reasonable actions to safely bring down the parasail and rescue the Plaintiffs after losing control of it (including, but not limited to, cutting the tow line);

E.   Failing to have proper safety equipment aboard the vessel;

F.   Failing to reasonably and properly respond to an emergency situation;

G.   Failing to radio or contact the United States Coast Guard or other agencies that could have assisted in recovering the Plaintiffs prior to them becoming fatally and catastrophically injured;

H.   Failing to properly instruct the Plaintiffs prior to engaging in parasailing activities on actions to take in the event of an emergency;

I.   Failing to have proper training prior to captaining a parasailing vessel;

J.   Failing to implement reasonable and proper safety policies and procedures for its passengers and parasailers (or failing to instruct its crew of the same);

K.   Operating while exceeding the capacity rating for the *M/V Airborne*;

L.   Cutting the towline that connected the parasail to the *M/V Airborne*;

M.   Failing to warn its passengers and parasailers of the risks of parasailing, especially of the risks of parasailing during poor or deteriorating weather conditions;

N.   Allowing its passengers and parasailers to parasail without first determining their skill level and familiarity with parasailing, without instructing its

passengers and parasailers on how to release themselves from the parasail equipment in emergency situations, and without warning its passengers and parasailers of the risks associated with parasailing in inclement weather; and

O.      Violating Florida Statues, Section 327.375(3) by failing to carry a United States Coast Guard license aboard the vessel;

P.      Violating Florida Statues, Section 327.375(4) by failing to have a functional VHF marine transceiver and a separate electronic device capable of providing access to National Weather Service forecasts and current weather conditions;

Q.      Violating Florida Statutes, Section 327.375(5) by failing to cease parasailing activities when sustained wind speeds of more than 20 mph, wind gusts of 15 mph high than sustained wind speeds, or wind speed gusts exceeding 25 mph entered the area of operation;

R.      Other acts of negligence not yet discovered.

58.     As a direct and proximate cause of Defendant DANIEL COUCH's negligence and extreme recklessness, V.S., a minor child, suffered severe and permanent injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and aggravation of previously existing conditions. The losses are either permanent or continuing, and V.S., a minor child, and will suffer losses into the future.

WHEREFORE, the Plaintiffs, RAVIKUMAR SADDA and ASRITHA RAVALA, as parents and natural guardians of V.S., a minor child, sue the Defendant DANIEL COUCH, and demand judgement against him for damages exclusive of attorneys' fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

## COUNT VII

*The Plaintiffs, RAVIKUMAR SADDA and ASRITHA RAVALA, as parents and natural guardians of V.S., a minor child,, claim of Negligence per se Against the Defendant DANIEL COUCH*

59.     Plaintiff readopts and realleges all allegations contained in Paragraphs 1 – 28.

60.　　At all material times, the Defendant DANIEL COUCH had a duty to exercise reasonable care for the safety of passengers, including V.S., a minor child. In addition, at all material times, Defendant DANIEL COUCH undertook the duty and responsibility to supervise and exercise reasonable care over V.S., a minor child, during and after the subject parasail ride.

61.　　Moreover, at all material times, the Defendant DANIEL COUCH had a duty to comply and at all times follow applicable Federal and state statutes, regulations, and rules, including industry safety standards. This includes Florida Statutes, Section 327.375, which governs and regulates parasailing operations conducted in Florida.

62.　　At all material times, the Defendant DANIEL COUCH failed to follow these applicable Federal and statutes, regulations, rule and safety standards, including but not limited to Florida Statutes, Section 327.375. Specifically, with respect to Florida Statutes, Section 327.375, the Defendant failed to follow and comply with subsections 327.375(3), 327.375(4) and 327.375(5), which provide:

> (3) The operator of a vessel engaged in commercial parasailing must have a current and valid license issued by the United States Coast Guard authorizing the operator to carry passengers for hire. The license must be appropriate for the number of passengers carried and the displacement of the vessel. The license must be carried on the vessel and be available for inspection while engaging in commercial parasailing activities.
>
> (4)  A vessel engaged in commercial parasailing must be equipped with a functional VHF marine transceiver and a separate electronic device capable of providing access to National Weather Service forecasts and current weather conditions.
>
> (5)(a)  Commercial parasailing is prohibited if the current observed wind conditions in the area of operation include a sustained wind speed of more than 20 miles per hour; if wind gusts are 15 miles per hour higher than the sustained wind speed; if the wind speed during gusts exceeds 25 miles per hour; if rain or heavy fog results in reduced visibility of less than 0.5 mile; or if a known lightning storm comes within 7 miles of the parasailing area.
>
> (b)  The operator of the vessel engaged in commercial parasailing shall use all available means to determine prevailing and forecasted weather conditions and record this information in a weather log each time passengers

are to be taken out on the water. The weather log must be available for inspection at all times at the operator's place of business.

63.     At all material times, V.S., a minor child, was a member of a class of person that were intended to be protected by these applicable Federal and state statutes, regulations, rule and safety standards, including but not limited to Florida Statutes, Section 327.375.

64.     As a direct and proximate cause of the Defendant DANIEL COUCH's failure to comply with and follow these applicable Federal and state statutes, regulations, rule and safety standards, including but not limited to Florida Statutes, Section 327.375, V.S., a minor child, suffered severe injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and aggravation of previously existing conditions. The losses are either permanent or continuing, and V.S., a minor child, suffered severe and permanent injury, and will suffer losses into the future.

WHEREFORE, the Plaintiffs, RAVIKUMAR SADDA and ASRITHA RAVALA, as parents and natural guardians of V.S., a minor child, sue the Defendant DANIEL COUCH, and demand judgement against him for damages exclusive of attorneys' fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

## COUNT VIII

*The Plaintiffs, RAVIKUMAR SADDA and ASRITHA RAVALA, as parents and natural guardians of V.S., a minor child, claim of Negligence Infliction of Emotional Distress Against the Defendant DANIEL COUCH*

65.     Plaintiff readopts and realleges all allegations contained in Paragraphs 1 – 28.

66.     At all material times, the Defendant DANIEL COUCH had a duty to exercise reasonable care for the safety of passengers, including to V.S., a minor child, and his aunt, Supraja Alaparthi. In addition, at all material times, Defendant DANIEL COUCH undertook the

duty and responsibility to supervise and exercise reasonable care over V.S., a minor child, and his aunt, Supraja Alaparthi, during and after the parasailing ride.

67.     At all material times, Defendant DANIEL COUCH breached his duties to V.S., a minor child, by the following actions and omissions:

A.     Failing to check the weather incoming prior to departing on the parasailing voyage;

B.     Failing to appreciate the changing whether conditions during the parasailing voyage;

C.     Continuing with parasailing activities after it became apparent that it was unsafe to do so;

D.     Failing to take reasonable actions to safely bring down the parasail and rescue the Plaintiffs after losing control of it (including, but not limited to, cutting the tow line);

E.     Failing to have proper safety equipment aboard the vessel;

F.     Failing to reasonably and properly respond to an emergency situation;

G.     Failing to radio or contact the United States Coast Guard or other agencies that could have assisted in recovering the Plaintiffs prior to them becoming fatally and catastrophically injured;

H.     Failing to properly instruct the Plaintiffs prior to engaging in parasailing activities on actions to take in the event of an emergency;

I.     Failing to have proper training prior to captaining a parasailing vessel;

J.     Failing to implement reasonable and proper safety policies and procedures for its passengers and parasailers (or failing to instruct its crew of the same);

K.     Operating while exceeding the capacity rating for the *M/V Airborne*;

L.     Cutting the towline that connected the parasail to the *M/V Airborne*;

M.     Failing to warn its passengers and parasailers of the risks of parasailing, especially of the risks of parasailing during poor or deteriorating weather conditions;

N.     Allowing its passengers and parasailers to parasail without first determining their skill level and familiarity with parasailing, without instructing its passengers and parasailers on how to release themselves from the parasail equipment in emergency situations, and without warning its passengers and

parasailers of the risks associated with parasailing in inclement weather; and

O. Violating Florida Statues, Section 327.375(3) by failing to carry a United States Coast Guard license aboard the vessel;

P. Violating Florida Statues, Section 327.375(4) by failing to have a functional VHF marine transceiver and a separate electronic device capable of providing access to National Weather Service forecasts and current weather conditions;

Q. Violating Florida Statutes, Section 327.375(5) by failing to cease parasailing activities when sustained wind speeds of more than 20 mph, wind gusts of 15 mph high than sustained wind speeds, or wind speed gusts exceeding 25 mph entered the area of operation;

R. Other acts of negligence not yet discovered.

68. As a direct and proximate cause of Defendant DANIEL COUCH's negligence and extreme recklessness, V.S., a minor child, suffered severe and permanent injury. In addition, as a direct and proximate cause of the Defendant DANIEL COUCH's negligence and extreme recklessness, V.S., a minor child, witnessed his aunt, SUPRAJA ALAPARTHI, suffer severe injury resulting in her death and witnessed his mother's lifeless body hanging from the bridge upon impact, which alone and in combination with his own physical injury, resulted in severe and continuing emotional distress to V.S., a minor child.

WHEREFORE, the Plaintiffs, RAVIKUMAR SADDA and ASRITHA RAVALA, as parents and natural guardians of V.S., a minor child, sue the Defendant DANIEL COUCH, and demand judgement against him for damages exclusive of attorneys' fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

## COUNT IX

*The Plaintiff SRINIVASRAO ALAPARTHI, as Personal Representative of the Estate of SUPRAJA ALAPARTHI, deceased, claim of Negligence Against the Defendant TANNER HELMERS.*

69. Plaintiff readopts and realleges all allegations contained in Paragraphs 1 – 28.

70. At all material times, the Defendant TANNER HELMERS had a duty to exercise

reasonable care for the safety of passengers, including Plaintiff's decedent, SUPRAJA ALAPARTHI. In addition, at all material times, Defendant TANNER HELMERS undertook the duty and responsibility to supervise and exercise reasonable care over Plaintiff's decedent, SUPRAJA ALAPARTHI, during and after the subject parasail ride.

71.   At all material times, Defendant TANNER HELMERS breached his duties to Plaintiff's decedent, SUPRAJA ALAPARTHI, by the following actions and omissions:

A.   Failing to check the weather incoming prior to departing on the parasailing voyage;

B.   Failing to appreciate the changing whether conditions during the parasailing voyage;

C.   Continuing with parasailing activities after it became apparent that it was unsafe to do so;

D.   Failing to take reasonable actions to safely bring down the parasail and rescue the Plaintiffs after losing control of it (including, but not limited to, cutting the tow line);

E.   Failing to have proper safety equipment aboard the vessel;

F.   Failing to reasonably and properly respond to an emergency situation;

G.   Failing to radio or contact the United States Coast Guard or other agencies that could have assisted in recovering the Plaintiffs prior to them becoming fatally and catastrophically injured;

H.   Failing to properly instruct the Plaintiffs prior to engaging in parasailing activities on actions to take in the event of an emergency;

I.   Failing to have proper training prior to captaining a parasailing vessel;

J.   Failing to implement reasonable and proper safety policies and procedures for its passengers and parasailers (or failing to instruct its crew of the same);

K.   Operating while exceeding the capacity rating for the *M/V Airborne*;

L.   Cutting the towline that connected the parasail to the *M/V Airborne*;

M.   Failing to warn its passengers and parasailers of the risks of parasailing, especially of the risks of parasailing during poor or deteriorating weather conditions;

N. Allowing its passengers and parasailers to parasail without first determining their skill level and familiarity with parasailing, without instructing its passengers and parasailers on how to release themselves from the parasail equipment in emergency situations, and without warning its passengers and parasailers of the risks associated with parasailing in inclement weather; and

O. Violating Florida Statues, Section 327.375(3) by failing to carry a United States Coast Guard license aboard the vessel;

P. Violating Florida Statues, Section 327.375(4) by failing to have a functional VHF marine transceiver and a separate electronic device capable of providing access to National Weather Service forecasts and current weather conditions;

Q. Violating Florida Statutes, Section 327.375(5) by failing to cease parasailing activities when sustained wind speeds of more than 20 mph, wind gusts of 15 mph high than sustained wind speeds, or wind speed gusts exceeding 25 mph entered the area of operation;

R. Other acts of negligence not yet discovered.

72.    As a direct and proximate cause of Defendant TANNER HELMERS's negligence and extreme recklessness, the Plaintiff's decedent, SUPRAJA ALAPARTHI, was killed.

73.    The ESTATE OF SUPRAJA ALAPARTHI and the Plaintiff's decedent's surviving spouse and two surviving minor children have suffered and will continue to suffer damages into the future. As a result, the Plaintiff, SRINIVASRAO ALAPARTHI, as Personal Representative of the Estate of SUPRAJA ALAPARTHI, deceased, seeks to recover all damages allowed under Florida's Wrongful Death Act, Fla. Stat. § 768.16, *et seq.*, and include the following:

A. The past and future pain and suffering of the Plaintiff's decedent's survivors;

B. The past and future costs of therapy and mental health treatment for the Plaintiff's decedent's survivors;

C. Loss of the care, maintenance, support, services, companionship, advice, counsel, inheritance and other reasonable contributions of pecuniary and non-pecuniary value that the Plaintiff's decedent's survivors would have other received during the Plaintiff's decedent's life had it not been for his untimely, tragic and wrongful death;

D. The expense of funeral arrangements arising from the injury and death of the Plaintiff's decedent;

E. The prospective net accumulations of the Estate of SUPRAJA ALAPARTHI; and

F. Any and all other damages that the applicable law allows.

WHEREFORE, the Plaintiff, SRINIVASRAO ALAPARTHI, as Personal Representative of the Estate of SUPRAJA ALAPARTHI, deceased, sues the Defendant TANNER HELMERS and demands judgement against him for damages exclusive of attorneys' fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

<u>**COUNT X**</u>

*The Plaintiff SRINIVASRAO ALAPARTHI, as Personal Representative of the Estate of SUPRAJA ALAPARTHI, deceased, claim of Negligence per se Against the Defendant TANNER HELMERS*

74.    Plaintiff readopts and realleges all allegations contained in Paragraphs 1 – 28.

75.    At all material times, the Defendant TANNER HELMERS had a duty to exercise reasonable care for the safety of passengers, including Plaintiff's decedent, SUPRAJA ALAPARTHI. In addition, at all material times, Defendant TANNER HELMERS undertook the duty and responsibility to supervise and exercise reasonable care over Plaintiff's decedent, SUPRAJA ALAPARTHI, during and after the subject parasail ride.

76.    Moreover, at all material times, the Defendant TANNER HELMERS had a duty to comply and at all times follow applicable Federal and state statutes, regulations, and rules, including industry safety standards. This includes Florida Statutes, Section 327.375, which governs and regulates parasailing operations conducted in Florida.

77.    At all material times, the Defendant TANNER HELMERS failed to follow these applicable Federal and statutes, regulations, rule and safety standards, including but not limited to Florida Statutes, Section 327.375. Specifically, with respect to Florida Statutes, Section

327.375, the Defendant failed to follow and comply with subsections 327.375(3), 327.375(4) and 327.375(5), which provide:

> (3) The operator of a vessel engaged in commercial parasailing must have a current and valid license issued by the United States Coast Guard authorizing the operator to carry passengers for hire. The license must be appropriate for the number of passengers carried and the displacement of the vessel. The license must be carried on the vessel and be available for inspection while engaging in commercial parasailing activities.

> (4)   A vessel engaged in commercial parasailing must be equipped with a functional VHF marine transceiver and a separate electronic device capable of providing access to National Weather Service forecasts and current weather conditions.

> (5)(a)   Commercial parasailing is prohibited if the current observed wind conditions in the area of operation include a sustained wind speed of more than 20 miles per hour; if wind gusts are 15 miles per hour higher than the sustained wind speed; if the wind speed during gusts exceeds 25 miles per hour; if rain or heavy fog results in reduced visibility of less than 0.5 mile; or if a known lightning storm comes within 7 miles of the parasailing area.

> (b)   The operator of the vessel engaged in commercial parasailing shall use all available means to determine prevailing and forecasted weather conditions and record this information in a weather log each time passengers are to be taken out on the water. The weather log must be available for inspection at all times at the operator's place of business.

78.   At all material times, the Plaintiff's decedent, SUPRAJA ALAPARTHI, was a member of a class of person that were intended to be protected by these applicable Federal and state statutes, regulations, rule and safety standards, including but not limited to Florida Statutes, Section 327.375.

79.   As a direct and proximate cause of the Defendant TANNER HELMERS's failure to comply with and follow these applicable Federal and state statutes, regulations, rule and safety standards, including but not limited to Florida Statutes, Section 327.375, the Plaintiff's decedent, SUPRAJA ALAPARTHI, suffered severe injury resulting in her death.

80.   The ESTATE OF SUPRAJA ALAPARTHI and the Plaintiff's decedent's surviving spouse

and two surviving minor children, have suffered and will continue to suffer damages into the future. As a result, the Plaintiff, SRINIVASRAO ALAPARTHI, as Personal Representative of the Estate of SUPRAJA ALAPARTHI, deceased, seeks to recover all damages allowed under Florida's Wrongful Death Act, Fla. Stat. § 768.16, *et seq.*, and include the following:

A. The past and future pain and suffering of the Plaintiff's decedent's survivors;

B. The past and future costs of therapy and mental health treatment for the Plaintiff's decedent's survivors;

C. Loss of the care, maintenance, support, services, companionship, advice, counsel, inheritance and other reasonable contributions of pecuniary and non-pecuniary value the that Plaintiff's decedent's survivors would have other received during the Plaintiff's decedent's life had it not been for his untimely, tragic and wrongful death;

D. The expense of funeral arrangements arising from the injury and death of the Plaintiff's decedent;

E. The prospective net accumulations of the Estate of SUPRAJA ALAPARTHI; and

F. Any and all other damages that the applicable law allows.

WHEREFORE, the Plaintiff, SRINIVASRAO ALAPARTHI, as Personal Representative of the Estate of SUPRAJA ALAPARTHI, deceased, sues the Defendant TANNER HELMERS and demands judgement against him for damages exclusive of attorneys' fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

## COUNT XI

*The Plaintiff SRINIVASRAO ALAPARTHI, as parent and natural guardian of Ak.A, a minor child, claim of Negligence Against the Defendant TANNER HELMERS*

81. Plaintiff readopts and realleges all allegations contained in Paragraphs 1 – 28.

82. At all material times, the Defendant TANNER HELMERS had a duty to exercise

28

reasonable care for the safety of passengers, including to Ak.A, a minor child. In addition, at all material times, Defendant TANNER HELMERS undertook the duty and responsibility to supervise and exercise reasonable care over Ak.A, a minor child, during and after the parasailing ride.

83. At all material times, Defendant TANNER HELMERS breached his duties to Ak.A, a minor child, by the following actions and omissions:

A.  Failing to check the weather incoming prior to departing on the parasailing voyage;

B.  Failing to appreciate the changing whether conditions during the parasailing voyage;

C.  Continuing with parasailing activities after it became apparent that it was unsafe to do so;

D.  Failing to take reasonable actions to safely bring down the parasail and rescue the Plaintiffs after losing control of it (including, but not limited to, cutting the tow line);

E.  Failing to have proper safety equipment aboard the vessel;

F.  Failing to reasonably and properly respond to an emergency situation;

G.  Failing to radio or contact the United States Coast Guard or other agencies that could have assisted in recovering the Plaintiffs prior to them becoming fatally and catastrophically injured;

H.  Failing to properly instruct the Plaintiffs prior to engaging in parasailing activities on actions to take in the event of an emergency;

I.  Failing to have proper training prior to captaining a parasailing vessel;

J.  Failing to implement reasonable and proper safety policies and procedures for its passengers and parasailers (or failing to instruct its crew of the same);

K.  Operating while exceeding the capacity rating for the *M/V Airborne*;

L.  Cutting the towline that connected the parasail to the *M/V Airborne*;

M.  Failing to warn its passengers and parasailers of the risks of parasailing, especially of the risks of parasailing during poor or deteriorating weather conditions;

N.   Allowing its passengers and parasailers to parasail without first determining their skill level and familiarity with parasailing, without instructing its passengers and parasailers on how to release themselves from the parasail equipment in emergency situations, and without warning its passengers and parasailers of the risks associated with parasailing in inclement weather; and

O.   Violating Florida Statues, Section 327.375(3) by failing to carry a United States Coast Guard license aboard the vessel;

P.   Violating Florida Statues, Section 327.375(4) by failing to have a functional VHF marine transceiver and a separate electronic device capable of providing access to National Weather Service forecasts and current weather conditions;

Q.   Violating Florida Statutes, Section 327.375(5) by failing to cease parasailing activities when sustained wind speeds of more than 20 mph, wind gusts of 15 mph high than sustained wind speeds, or wind speed gusts exceeding 25 mph entered the area of operation;

R.   Other acts of negligence not yet discovered.

84.   As a direct and proximate cause of Defendant TANNER HELMERS's negligence and extreme recklessness, Ak.A,, a minor child, suffered severe and permanent injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and aggravation of previously existing conditions. The losses are either permanent or continuing, and Ak.A., a minor child, and will suffer losses into the future.

WHEREFORE, the Plaintiff, SRINIVASRAO ALAPARTHI, as parent and natural guardian of Ak.A, a minor child, sues the Defendant TANNER HELMERS and demands judgement against him for damages exclusive of attorneys' fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

## **COUNT XII**
*The Plaintiff SRINIVASRAO ALAPARTHI, as parent and natural guardian of Ak.A, a minor child, claim of Negligence per se Against the Defendant TANNER HELMERS.*

85.   Plaintiff readopts and realleges all allegations contained in Paragraphs 1 – 28.

86.   At all material times, the Defendant TANNER HELMERS had a duty to exercise reasonable care for the safety of passengers, including Ak.A., a minor child. In addition, at all material times, Defendant TANNER HELMERS undertook the duty and responsibility to supervise and exercise reasonable care over Ak.A., a minor child, during and after the subject parasail ride.

87.   Moreover, at all material times, the Defendant TANNER HELMERS had a duty to comply and at all times follow applicable Federal and state statutes, regulations, and rules, including industry safety standards. This includes Florida Statutes, Section 327.375, which governs and regulates parasailing operations conducted in Florida.

88.   At all material times, the Defendant TANNER HELMERS failed to follow these applicable Federal and statutes, regulations, rule and safety standards, including but not limited to Florida Statutes, Section 327.375. Specifically, with respect to Florida Statutes, Section 327.375, the Defendant failed to follow and comply with Florida Statutes, Sections 327.375(3), 327.375(4) and 327.375(5), which provide:

> (3) The operator of a vessel engaged in commercial parasailing must have a current and valid license issued by the United States Coast Guard authorizing the operator to carry passengers for hire. The license must be appropriate for the number of passengers carried and the displacement of the vessel. The license must be carried on the vessel and be available for inspection while engaging in commercial parasailing activities.
>
> (4)  A vessel engaged in commercial parasailing must be equipped with a functional VHF marine transceiver and a separate electronic device capable of providing access to National Weather Service forecasts and current weather conditions.
>
> (5)(a)  Commercial parasailing is prohibited if the current observed wind conditions in the area of operation include a sustained wind speed of more than 20 miles per hour; if wind gusts are 15 miles per hour higher than the sustained wind speed; if the wind speed during gusts exceeds 25 miles per hour; if rain or heavy fog results in reduced visibility of less than 0.5 mile; or if a known lightning storm comes within 7 miles of the parasailing area.

>      (b)   The operator of the vessel engaged in commercial parasailing shall use
> all available means to determine prevailing and forecasted weather
> conditions and record this information in a weather log each time passengers
> are to be taken out on the water. The weather log must be available for
> inspection at all times at the operator's place of business.

89.   At all material times, Ak.A., a minor child, was a member of a class of person that were

intended to be protected by these applicable Federal and state statutes, regulations, rule and

safety standards, including but not limited to Florida Statutes, Section 327.375.

90.   As a direct and proximate cause of the Defendant TANNER HELMERS's failure to

comply with and follow these applicable Federal and state statutes, regulations, rule and

safety standards, including but not limited to Florida Statutes, Section 327.375, Ak.A., a

minor child, suffered severe injury resulting in pain and suffering, disability, disfigurement,

mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization,

medical and nursing care and treatment, loss of earnings, loss of ability to earn money and

aggravation of previously existing conditions. The losses are either permanent or

continuing, and Ak.A., a minor child, suffered severe and permanent injury, and will suffer

losses into the future.

WHEREFORE, the Plaintiff, SRINIVASRAO ALAPARTHI, as parent and natural

guardian of Ak.A, a minor child, sues the Defendant TANNER HELMERS and demands

judgement against him for damages exclusive of attorneys' fees, costs, and interest, in an amount

in excess of the jurisdictional limits of this Court.

## COUNT XIII

*The Plaintiff SRINIVASRAO ALAPARTHI, as parent and natural guardian of
Ak.A, a minor child, claim of Negligent Infliction of Emotional Distress Against
the Defendant TANNER HELMERS*

91.   Plaintiff readopts and realleges all allegations contained in Paragraphs 1 – 28.

92.   At all material times, the Defendant TANNER HELMERS had a duty to exercise

reasonable care for the safety of passengers, including to Ak.A, a minor child, and his mother, Supraja Alaparthi. In addition, at all material times, Defendant TANNER HELMERS undertook the duty and responsibility to supervise and exercise reasonable care over Ak.A, a minor child, and his mother, Supraja Alaparthi, during and after the parasailing ride.

93.  At all material times, Defendant TANNER HELMERS breached his duties by the following actions and omissions:

A.  Failing to check the weather incoming prior to departing on the parasailing voyage;

B.  Failing to appreciate the changing whether conditions during the parasailing voyage;

C.  Continuing with parasailing activities after it became apparent that it was unsafe to do so;

D.  Failing to take reasonable actions to safely bring down the parasail and rescue the Plaintiffs after losing control of it (including, but not limited to, cutting the tow line);

E.  Failing to have proper safety equipment aboard the vessel;

F.  Failing to reasonably and properly respond to an emergency situation;

G.  Failing to radio or contact the United States Coast Guard or other agencies that could have assisted in recovering the Plaintiffs prior to them becoming fatally and catastrophically injured;

H.  Failing to properly instruct the Plaintiffs prior to engaging in parasailing activities on actions to take in the event of an emergency;

I.  Failing to have proper training prior to captaining a parasailing vessel;

J.  Failing to implement reasonable and proper safety policies and procedures for its passengers and parasailers (or failing to instruct its crew of the same);

K.  Operating while exceeding the capacity rating for the *M/V Airborne*;

L.  Cutting the towline that connected the parasail to the *M/V Airborne*;

M.  Failing to warn its passengers and parasailers of the risks of parasailing, especially of the risks of parasailing during poor or deteriorating weather

33

conditions;

N.   Allowing its passengers and parasailers to parasail without first determining their skill level and familiarity with parasailing, without instructing its passengers and parasailers on how to release themselves from the parasail equipment in emergency situations, and without warning its passengers and parasailers of the risks associated with parasailing in inclement weather; and

O.   Violating Florida Statues, Section 327.375(3) by failing to carry a United States Coast Guard license aboard the vessel;

P.   Violating Florida Statues, Section 327.375(4) by failing to have a functional VHF marine transceiver and a separate electronic device capable of providing access to National Weather Service forecasts and current weather conditions;

Q.   Violating Florida Statutes, Section 327.375(5) by failing to cease parasailing activities when sustained wind speeds of more than 20 mph, wind gusts of 15 mph high than sustained wind speeds, or wind speed gusts exceeding 25 mph entered the area of operation;

R.   Other acts of negligence not yet discovered.

94.   As a direct and proximate cause of Defendant TANNER HELMERS's negligence and extreme recklessness, Ak.A, a minor child, suffered severe and permanent injury. In addition, as a direct and proximate cause of the Defendant TANNER HELMERS's negligence and extreme recklessness, Ak.A., a minor child, witnessed his mother, SUPRAJA ALAPARTHI, suffer severe injury resulting in her death and witnessed his mother's lifeless body hanging from the bridge upon impact, which alone and in combination with his own physical injury, resulted in severe and continuing emotional distress to Ak.A., a minor child.

WHEREFORE, the Plaintiff, SRINIVASRAO ALAPARTHI, as parent and natural guardian of Ak.A, a minor child, sues the Defendant TANNER HELMERS and demands judgement against him for damages exclusive of attorneys' fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

## COUNT XIV

*The Plaintiffs RAVIKUMAR SADDA and ASRITHA RAVALA, as parents and natural guardians of V.S., a minor child, claim of Negligence Against the Defendant TANNER HELMERS*

95.   Plaintiff readopts and realleges all allegations contained in Paragraphs 1 – 28.

96.   At all material times, the Defendant TANNER HELMERS had a duty to exercise reasonable care for the safety of passengers, including to V.S., a minor child. In addition, at all material times, Defendant TANNER HELMERS undertook the duty and responsibility to supervise and exercise reasonable care over V.S., a minor child, during and after the parasailing ride.

97.   At all material times, Defendant TANNER HELMERS breached his duties to V.S., a minor child, by the following actions and omissions:

    A.    Failing to check the weather incoming prior to departing on the parasailing voyage;

    B.    Failing to appreciate the changing whether conditions during the parasailing voyage;

    C.    Continuing with parasailing activities after it became apparent that it was unsafe to do so;

    D.    Failing to take reasonable actions to safely bring down the parasail and rescue the Plaintiffs after losing control of it (including, but not limited to, cutting the tow line);

    E.    Failing to have proper safety equipment aboard the vessel;

    F.    Failing to reasonably and properly respond to an emergency situation;

    G.    Failing to radio or contact the United States Coast Guard or other agencies that could have assisted in recovering the Plaintiffs prior to them becoming fatally and catastrophically injured;

    H.    Failing to properly instruct the Plaintiffs prior to engaging in parasailing activities on actions to take in the event of an emergency;

    I.    Failing to have proper training prior to captaining a parasailing vessel;

    J.    Failing to implement reasonable and proper safety policies and procedures

for its passengers and parasailers (or failing to instruct its crew of the same);

K.     Operating while exceeding the capacity rating for the *M/V Airborne*;

L.     Cutting the towline that connected the parasail to the *M/V Airborne*;

M.     Failing to warn its passengers and parasailers of the risks of parasailing, especially of the risks of parasailing during poor or deteriorating weather conditions;

N.     Allowing its passengers and parasailers to parasail without first determining their skill level and familiarity with parasailing, without instructing its passengers and parasailers on how to release themselves from the parasail equipment in emergency situations, and without warning its passengers and parasailers of the risks associated with parasailing in inclement weather; and

O.     Violating Florida Statues, Section 327.375(3) by failing to carry a United States Coast Guard license aboard the vessel;

P.     Violating Florida Statues, Section 327.375(4) by failing to have a functional VHF marine transceiver and a separate electronic device capable of providing access to National Weather Service forecasts and current weather conditions;

Q.     Violating Florida Statutes, Section 327.375(5) by failing to cease parasailing activities when sustained wind speeds of more than 20 mph, wind gusts of 15 mph high than sustained wind speeds, or wind speed gusts exceeding 25 mph entered the area of operation;

R.     Other acts of negligence not yet discovered.

98.     As a direct and proximate cause of Defendant TANNER HELMERS's negligence and extreme recklessness, V.S., a minor child, suffered severe and permanent injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and aggravation of previously existing conditions. The losses are either permanent or continuing, and V.S., a minor child, and will suffer losses into the future.

WHEREFORE, the Plaintiffs, RAVIKUMAR SADDA and ASRITHA RAVALA, as parents and natural guardians of V.S., a minor child, sue the Defendant TANNER HELMERS, and

demand judgement against him for damages exclusive of attorneys' fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

## COUNT XV

*The Plaintiffs, RAVIKUMAR SADDA and ASRITHA RAVALA, as parents and natural guardians of V.S., a minor child,, claim of Negligence per se Against the Defendant TANNER HELMERS*

99.   Plaintiff readopts and realleges all allegations contained in Paragraphs 1 – 28.

100.   At all material times, the Defendant TANNER HELMERS had a duty to exercise reasonable care for the safety of passengers, including V.S., a minor child. In addition, at all material times, Defendant TANNER HELMERS undertook the duty and responsibility to supervise and exercise reasonable care over V.S., a minor child, during and after the subject parasail ride.

101.   Moreover, at all material times, the Defendant TANNER HELMERS had a duty to comply and at all times follow applicable Federal and state statutes, regulations, and rules, including industry safety standards. This includes Florida Statutes, Section 327.375, which governs and regulates parasailing operations conducted in Florida.

102.   At all material times, the Defendant TANNER HELMERS failed to follow these applicable Federal and statutes, regulations, rule and safety standards, including but not limited to Florida Statutes, Section 327.375. Specifically, with respect to Florida Statutes, Section 327.375, the Defendant failed to follow and comply with subsections 327.375(3), 327.375(4) and 327.375(5), which provide:

> (3) The operator of a vessel engaged in commercial parasailing must have a current and valid license issued by the United States Coast Guard authorizing the operator to carry passengers for hire. The license must be appropriate for the number of passengers carried and the displacement of the vessel. The license must be carried on the vessel and be available for inspection while engaging in commercial parasailing activities.
>
> (4)   A vessel engaged in commercial parasailing must be equipped with a

37

functional VHF marine transceiver and a separate electronic device capable of providing access to National Weather Service forecasts and current weather conditions.

(5)(a)   Commercial parasailing is prohibited if the current observed wind conditions in the area of operation include a sustained wind speed of more than 20 miles per hour; if wind gusts are 15 miles per hour higher than the sustained wind speed; if the wind speed during gusts exceeds 25 miles per hour; if rain or heavy fog results in reduced visibility of less than 0.5 mile; or if a known lightning storm comes within 7 miles of the parasailing area.

(b)   The operator of the vessel engaged in commercial parasailing shall use all available means to determine prevailing and forecasted weather conditions and record this information in a weather log each time passengers are to be taken out on the water. The weather log must be available for inspection at all times at the operator's place of business.

103.   At all material times, V.S., a minor child, was a member of a class of person that were intended to be protected by these applicable Federal and state statutes, regulations, rule and safety standards, including but not limited to Florida Statutes, Section 327.375.

104.   As a direct and proximate cause of the Defendant TANNER HELMERS's failure to comply with and follow these applicable Federal and state statutes, regulations, rule and safety standards, including but not limited to Florida Statutes, Section 327.375, V.S., a minor child, suffered severe injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and aggravation of previously existing conditions. The losses are either permanent or continuing, and V.S., a minor child, suffered severe and permanent injury, and will suffer losses into the future.

WHEREFORE, the Plaintiffs, RAVIKUMAR SADDA and ASRITHA RAVALA, as parents and natural guardians of V.S., a minor child, sue the Defendant TANNER HELMERS, and demand judgement against him for damages exclusive of attorneys' fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

## COUNT XVI

*The Plaintiffs, RAVIKUMAR SADDA and ASRITHA RAVALA, as parents and natural guardians of V.S., a minor child, claim of Negligence Infliction of Emotional Distress Against the Defendant TANNER HELMERS*

105.    Plaintiff readopts and realleges all allegations contained in Paragraphs 1 – 28.

106.    At all material times, the Defendant TANNER HELMERS had a duty to exercise reasonable care for the safety of passengers, including to V.S., a minor child, and his aunt, Supraja Alaparthi. In addition, at all material times, Defendant TANNER HELMERS undertook the duty and responsibility to supervise and exercise reasonable care over V.S., a minor child, and his aunt, Supraja Alaparthi, during and after the parasailing ride.

107.    At all material times, Defendant TANNER HELMERS breached his duties by the following actions and omissions:

A.    Failing to check the weather incoming prior to departing on the parasailing voyage;

B.    Failing to appreciate the changing whether conditions during the parasailing voyage;

C.    Continuing with parasailing activities after it became apparent that it was unsafe to do so;

D.    Failing to take reasonable actions to safely bring down the parasail and rescue the Plaintiffs after losing control of it (including, but not limited to, cutting the tow line);

E.    Failing to have proper safety equipment aboard the vessel;

F.    Failing to reasonably and properly respond to an emergency situation;

G.    Failing to radio or contact the United States Coast Guard or other agencies that could have assisted in recovering the Plaintiffs prior to them becoming fatally and catastrophically injured;

H.    Failing to properly instruct the Plaintiffs prior to engaging in parasailing activities on actions to take in the event of an emergency;

I.    Failing to have proper training prior to captaining a parasailing vessel;

J.    Failing to implement reasonable and proper safety policies and procedures

for its passengers and parasailers (or failing to instruct its crew of the same);

K.      Operating while exceeding the capacity rating for the *M/V Airborne*;

L.      Cutting the towline that connected the parasail to the *M/V Airborne*;

M.     Failing to warn its passengers and parasailers of the risks of parasailing, especially of the risks of parasailing during poor or deteriorating weather conditions;

N.     Allowing its passengers and parasailers to parasail without first determining their skill level and familiarity with parasailing, without instructing its passengers and parasailers on how to release themselves from the parasail equipment in emergency situations, and without warning its passengers and parasailers of the risks associated with parasailing in inclement weather; and

O.     Violating Florida Statues, Section 327.375(3) by failing to carry a United States Coast Guard license aboard the vessel;

P.     Violating Florida Statues, Section 327.375(4) by failing to have a functional VHF marine transceiver and a separate electronic device capable of providing access to National Weather Service forecasts and current weather conditions;

Q.     Violating Florida Statutes, Section 327.375(5) by failing to cease parasailing activities when sustained wind speeds of more than 20 mph, wind gusts of 15 mph high than sustained wind speeds, or wind speed gusts exceeding 25 mph entered the area of operation;

R.     Other acts of negligence not yet discovered.

108.   As a direct and proximate cause of Defendant TANNER HELMERS's negligence and extreme recklessness, V.S., a minor child, suffered severe and permanent injury. In addition, as a direct and proximate cause of the Defendant TANNER HELMERS's negligence and extreme recklessness, V.S., a minor child, witnessed his aunt, SUPRAJA ALAPARTHI, suffer severe injury resulting in her death and witnessed his mother's lifeless body hanging from the bridge upon impact, which alone and in combination with his own physical injury, resulted in severe and continuing emotional distress to V.S., a minor child.

WHEREFORE, the Plaintiffs, RAVIKUMAR SADDA and ASRITHA RAVALA, as

parents and natural guardians of V.S., a minor child, sue the Defendant TANNER HELMERS, and demand judgement against him for damages exclusive of attorneys' fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

## COUNT XVII

*The Plaintiff SRINIVASRAO ALAPARTHI, as Personal Representative of the Estate of SUPRAJA ALAPARTHI, deceased, claim of Negligence Against the Defendant CAPTAIN PIP'S HOLDINGS, LLC.*

109. Plaintiff readopts and realleges all allegations contained in Paragraphs 1 – 28.

110. At all material times, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, had a duty to exercise reasonable care for the safety of passengers aboard the *M/V Airborne*, including Plaintiff's decedent, SUPRAJA ALAPARTHI. In addition, at all material times, Defendant CAPTAIN PIP'SHOLDINGS, LLC, undertook the duty and responsibility to supervise and exercise reasonable care over Plaintiff's decedent, SUPRAJA ALAPARTHI, during and after the subject parasail ride.

111. In the alternative, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, had a duty to train, instruct, and vet the crew aboard the *M/V Airborne*, to ensure the safety of passengers aboard the *M/V Airborne*, including Plaintiff's decedent, SUPRAJA ALAPARTHI. In addition, at all material times, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, undertook the duty and responsibility to train, instruct, and vet the crew aboard the *M/V Airborne*, to ensure the safety of passengers aboard the vessel.

112. In the alternative, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, had a duty to implement policies and procedures for parasailing activities aboard the *M/V Airborne*, to ensure the safety of passengers aboard the vessel. In addition, at all material times, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, undertook the duty and responsibility to

41

implement policies and procedures for parasailing activities aboard the *M/V Airborne*, to ensure the safety of passengers aboard the vessel.

113.   At all material times, Defendant CAPTAIN PIP'S HOLDINGS, LLC, breached its duties to Plaintiff's decedent, SUPRAJA ALAPARTHI, by the following actions and omissions:

    A.    Failing to reasonably and properly train, instruct or supervise employees, agents, contractors, masters, officers, crew members, or seamen, including the Defendants DANIEL COUCH and TANNER HELMERS;

    B.    Allowing unqualified and untrained employees, agents, contractors, masters, officers, crew members, or seamen to operate the *M/V Airborne* and conduct parasailing activities;

    C.    Failing to reasonably and properly equip the vessel with the proper safety and parasailing equipment;

    D.    Failing to properly equip or use the available safety and parasailing equipment aboard the *M/V Airborne*;

    E.    Failing to implement reasonable and proper safety policies and procedures for its passengers and parasailers (or failing to instruct its crew of the same);

    F.    Failing to implement reasonable and proper safety policies and procedures (or failing to instruct its crew of the same) regarding emergency situations, including losing control of a parasail during a ride;

    G.    Failing to provide safety instructions and briefing to its passengers and parasailers, including safety instructions and briefing concerning what to do in emergency situations (such as losing control of a parasail during a ride);

    H.    Failing to check the weather conditions both before and during the subject parasailing ride;

    I.    Failing to have the proper equipment aboard the *M/V Airborne* to allow the crew to check for inclement weather;

    J.    Failing to properly utilize available equipment aboard the *M/V Airborne* to check the weather conditions;

    K.    Operating in unsafe weather conditions, including conditions with strong and gusting winds;

    L.    Failing to cease all parasailing activities when it became apparent that inclement weather was imminent;

    M.    Operating while exceeding the capacity rating for the *M/V Airborne*;

N.     Cutting the towline that connected the parasail to the *M/V Airborne*;

O.     Failing to warn its passengers and parasailers of the risks of parasailing, especially of the risks of parasailing during poor or deteriorating weather conditions;

P.     Allowing its passengers and parasailers to parasail without first determining their skill level and familiarity with parasailing, without instructing its passengers and parasailers on how to release themselves from the parasail equipment in emergency situations, and without warning its passengers and parasailers of the risks associated with parasailing in inclement weather; and

Q.     Violating Florida Statues, Section 327.375(3) by failing to carry a United States Coast Guard license aboard the vessel;

R.     Violating Florida Statues, Section 327.375(4) by failing to have a functional VHF marine transceiver and a separate electronic device capable of providing access to National Weather Service forecasts and current weather conditions;

S.     Violating Florida Statutes, Section 327.375(5) by failing to cease parasailing activities when sustained wind speeds of more than 20 mph, wind gusts of 15 mph high than sustained wind speeds, or wind speed gusts exceeding 25 mph entered the area of operation;

T.     Failing to properly train, instruct, or vet the crew aboard the *M/V Airborne*;

U.     Failing to properly train, instruct, or vet non-party Lighthouse Parasail, Inc.;

V.     Other acts of negligence not yet discovered.

114.     As a direct and proximate cause of Defendant CAPTAIN PIP'S HOLDINGS, LLC, negligence and extreme recklessness, the Plaintiff's decedent, SUPRAJA ALAPARTHI, was killed.

115.     The ESTATE OF SUPRAJA ALAPARTHI and the Plaintiff's decedent's surviving spouse and two surviving minor children have suffered and will continue to suffer damages into the future. As a result, the Plaintiff, SRINIVASRAO ALAPARTHI, as Personal Representative of the Estate of SUPRAJA ALAPARTHI, deceased, seeks to recover all damages allowed under Florida's Wrongful Death Act, Fla. Stat. § 768.16, *et seq.*, and include the following:

A.      The past and future pain and suffering of the Plaintiff's decedent's survivors;

B.      The past and future costs of therapy and mental health treatment for the Plaintiff's decedent's survivors;

C.      Loss of the care, maintenance, support, services, companionship, advice, counsel, inheritance and other reasonable contributions of pecuniary and non-pecuniary value that the Plaintiff's decedent's survivors would have other received during the Plaintiff's decedent's life had it not been for his untimely, tragic and wrongful death;

D.      The expense of funeral arrangements arising from the injury and death of the Plaintiff's decedent;

E.      The prospective net accumulations of the Estate of SUPRAJA ALAPARTHI; and

F.      Any and all other damages that the applicable law allows.

WHEREFORE, the Plaintiff, SRINIVASRAO ALAPARTHI, as Personal Representative of the Estate of SUPRAJA ALAPARTHI, deceased, sues the Defendant CAPTAIN PIP'S HOLDINGS, LLC, and demands judgement against him for damages exclusive of attorneys' fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

## COUNT XVIII

*The Plaintiff SRINIVASRAO ALAPARTHI, as Personal Representative of the Estate of SUPRAJA ALAPARTHI, deceased, claim of Vicarious Liability Against the Defendant CAPTAIN PIP'S HOLDINGS, LLC.*

116.    Plaintiff readopts and realleges all allegations contained in Paragraphs 1 – 28.

117.    At all material times, non-party Lighthouse Parasail Inc., and the Defendants DANIEL COUCH and TANNER HELMERS were agents (apparent or actual) of Defendant CAPTAIN PIP'S HOLDINGS, LLC, and therefore the Defendant CAPTAIN PIP'S HOLDINGS, LLC, is vicariously liable for any all negligence committed by them.

118.    At all material times, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, hired, contracted, authorized or otherwise entered into an agreement with non-party Lighthouse

Parasail Inc., and the Defendants DANIEL COUCH and TANNER HELMERS, allowing them to, *inter alia*, operate parasailing voyages aboard the *M/V Airborne* from the Defendant CAPTAIN PIP'S HOLDINGS, LLC's marina and resort. Accordingly, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, acknowledged or represented that non-party Lighthouse Parasail Inc., and the Defendants DANIEL COUCH and TANNER HELMERS would act on behalf of Defendant CAPTAIN PIP'S HOLDINGS, LLC, and non-party Lighthouse Parasail Inc., and the Defendants DANIEL COUCH and TANNER HELMERS accepted the undertaking.

119.   In the alternative, at all material times, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, made representations to the general public, including to the Plaintiffs, through its website, its social media accounts, signage at its resort and marina, and other fora holding non-party Lighthouse Parasail Inc. (including its employees, agents, and crew), and the Defendants DANIEL COUCH and TANNER HELMERS to be agents of the Defendant CAPTAIN PIP's HOLDINGS, LLC.

120.   At all material times, Plaintiff's Decedent, SUPRAJA ALAPARTHI, and her family detrimentally relied on this agency relationship (actual or apparent) and Defendant CAPTAIN PIP'S HOLDINGS, LLC's aforementioned representations regarding the relationship between that entity and non-party Lighthouse Parasail Inc. (including its employees, agents, and crew), and the Defendants DANIEL COUCH and TANNER HELMERS in deciding to parasail with them.

121.   At all material times, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, had the right or authority to control the conduct of non-party Lighthouse Parasail Inc. (including its employees, agents, and crew), and the Defendants DANIEL COUCH and TANNER HELMERS, including but not limited to prohibiting from allowing them to operate

parasailing voyages from the Defendant CAPTAIN PIP'S HOLDINGS, LLC's marina and resort.

122.   At all material times, non-party Lighthouse Parasail Inc. (including its employees, agents, and crew), and the Defendants DANIEL COUCH and TANNER HELMERS, were acting within the course and scope of their actual or apparent authority and acting on behalf of the Defendant CAPTAIN PIP'S HOLDINGS, LLC.

123.   As set forth above and through this Complaint, non-party Lighthouse Parasail Inc. (including its employees, agents, and crew), and the Defendants DANIEL COUCH and TANNER HELMERS were negligent through the following actions and omissions:

A.   Failing to reasonably and properly train, instruct or supervise employees, agents, contractors, masters, officers, crew members, or seamen, including the Defendants DANIEL COUCH and TANNER HELMERS;

B.   Allowing unqualified and untrained employees, agents, contractors, masters, officers, crew members, or seamen to operate the *M/V Airborne* and conduct parasailing activities;

C.   Failing to reasonably and properly equip the vessel with the proper safety and parasailing equipment;

D.   Failing to properly equip or use the available safety and parasailing equipment aboard the *M/V Airborne*;

E.   Failing to implement reasonable and proper safety policies and procedures for its passengers and parasailers (or failing to instruct its crew of the same);

F.   Failing to implement reasonable and proper safety policies and procedures (or failing to instruct its crew of the same) regarding emergency situations, including losing control of a parasail during a ride;

G.   Failing to provide safety instructions and briefing to its passengers and parasailers, including safety instructions and briefing concerning what to do in emergency situations (such as losing control of a parasail during a ride);

H.   Failing to check the weather conditions both before and during the subject parasailing ride;

I.   Failing to have the proper equipment aboard the *M/V Airborne* to allow the crew to check for inclement weather;

46

J.     Failing to properly utilize available equipment aboard the *M/V Airborne* to check the weather conditions;

K.     Operating in unsafe weather conditions, including conditions with strong and gusting winds;

L.     Failing to cease all parasailing activities when it became apparent that inclement weather was imminent;

M.     Operating while exceeding the capacity rating for the *M/V Airborne*;

N.     Cutting the towline that connected the parasail to the *M/V Airborne*;

O.     Failing to warn its passengers and parasailers of the risks of parasailing, especially of the risks of parasailing during poor or deteriorating weather conditions;

P.     Allowing its passengers and parasailers to parasail without first determining their skill level and familiarity with parasailing, without instructing its passengers and parasailers on how to release themselves from the parasail equipment in emergency situations, and without warning its passengers and parasailers of the risks associated with parasailing in inclement weather; and

Q.     Violating Florida Statues, Section 327.375(3) by failing to carry a United States Coast Guard license aboard the vessel;

R.     Violating Florida Statues, Section 327.375(4) by failing to have a functional VHF marine transceiver and a separate electronic device capable of providing access to National Weather Service forecasts and current weather conditions;

S.     Violating Florida Statutes, Section 327.375(5) by failing to cease parasailing activities when sustained wind speeds of more than 20 mph, wind gusts of 15 mph high than sustained wind speeds, or wind speed gusts exceeding 25 mph entered the area of operation;

T.     Failing to properly train, instruct, or vet the crew aboard the *M/V Airborne*;

U.     Other acts of negligence not yet discovered.

124.    As a direct and proximate cause of the aforementioned negligence and extreme recklessness, the Plaintiff's decedent, SUPRAJA ALAPARTHI, was killed.

125.    The ESTATE OF SUPRAJA ALAPARTHI and the Plaintiff's decedent's surviving spouse and two surviving minor children have suffered and will continue to suffer damages into the future. As a result, the Plaintiff, SRINIVASRAO ALAPARTHI, as Personal

Representative of the Estate of SUPRAJA ALAPARTHI, deceased, seeks to recover all damages allowed under Florida's Wrongful Death Act, Fla. Stat. § 768.16, *et seq.*, and include the following:

A.    The past and future pain and suffering of the Plaintiff's decedent's survivors;

B.    The past and future costs of therapy and mental health treatment for the Plaintiff's decedent's survivors;

C.    Loss of the care, maintenance, support, services, companionship, advice, counsel, inheritance and other reasonable contributions of pecuniary and non-pecuniary value that the Plaintiff's decedent's survivors would have other received during the Plaintiff's decedent's life had it not been for his untimely, tragic and wrongful death;

D.    The expense of funeral arrangements arising from the injury and death of the Plaintiff's decedent;

E.    The prospective net accumulations of the Estate of SUPRAJA ALAPARTHI; and

F.    Any and all other damages that the applicable law allows.

WHEREFORE, the Plaintiff, SRINIVASRAO ALAPARTHI, as Personal Representative of the Estate of SUPRAJA ALAPARTHI, deceased, sues the Defendant CAPTAIN PIP'S HOLDINGS, LLC, and demands judgement against him for damages exclusive of attorneys' fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

### COUNT XIX

*The Plaintiff SRINIVASRAO ALAPARTHI, as parent and natural guardian of Ak.A, a minor child, claim of Negligence Against the Defendant CAPTAIN PIP'S HOLDINGS, LLC*

126.   Plaintiff readopts and realleges all allegations contained in Paragraphs 1 – 28.

127.   At all material times, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, had a duty to exercise reasonable care for the safety of passengers aboard the *M/V Airborne*, including Ak.A, a minor child. In addition, at all material times, Defendant CAPTAIN

PIP'S HOLDINGS, LLC, undertook the duty and responsibility to supervise and exercise reasonable care over Ak.A, a minor child, during and after the subject parasail ride.

128.    In the alternative, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, had a duty to train, instruct, and vet the crew aboard the *M/V Airborne*, to ensure the safety of passengers aboard the *M/V Airborne*, including Ak.A, a minor child. In addition, at all material times, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, undertook the duty and responsibility to train, instruct, and vet the crew aboard the *M/V Airborne*, to ensure the safety of passengers aboard the vessel.

129.    In the alternative, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, had a duty to implement policies and procedures for parasailing activities aboard the *M/V Airborne*, to ensure the safety of passengers aboard the vessel. In addition, at all material times, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, undertook the duty and responsibility to implement policies and procedures for parasailing activities aboard the *M/V Airborne*, to ensure the safety of passengers aboard the vessel.

130.    At all material times, Defendant CAPTAIN PIP'S HOLDINGS, LLC, breached its duties to Ak.A, a minor child, by the following actions and omissions:

A.      Failing to reasonably and properly train, instruct or supervise employees, agents, contractors, masters, officers, crew members, or seamen, including the Defendants DANIEL COUCH and TANNER HELMERS;

B.      Allowing unqualified and untrained employees, agents, contractors, masters, officers, crew members, or seamen to operate the *M/V Airborne* and conduct parasailing activities;

C.      Failing to reasonably and properly equip its vessel with the proper safety and parasailing equipment;

D.      Failing to properly equip or use the available safety and parasailing equipment aboard the *M/V Airborne*;

E.      Failing to implement reasonable and proper safety policies and procedures for its passengers and parasailers (or failing to instruct its crew of the same);

F.    Failing to implement reasonable and proper safety policies and procedures (or failing to instruct its crew of the same) regarding emergency situations, including losing control of a parasail during a ride;

G.    Failing to provide safety instructions and briefing to its passengers and parasailers, including safety instructions and briefing concerning what to do in emergency situations (such as losing control of a parasail during a ride);

H.    Failing to check the weather conditions both before and during the subject parasailing ride;

I.    Failing to have the proper equipment aboard the *M/V Airborne* to allow the crew to check for inclement weather;

J.    Failing to properly utilize available equipment aboard the *M/V Airborne* to check the weather conditions;

K.    Operating in unsafe weather conditions, including conditions with strong and gusting winds;

L.    Failing to cease all parasailing activities when it became apparent that inclement weather was imminent;

M.    Operating while exceeding the capacity rating for the *M/V Airborne*;

N.    Cutting the towline that connected the parasail to the *M/V Airborne*;

O.    Failing to warn its passengers and parasailers of the risks of parasailing, especially of the risks of parasailing during poor or deteriorating weather conditions;

P.    Allowing its passengers and parasailers to parasail without first determining their skill level and familiarity with parasailing, without instructing its passengers and parasailers on how to release themselves from the parasail equipment in emergency situations, and without warning its passengers and parasailers of the risks associated with parasailing in inclement weather; and

Q.    Violating Florida Statues, Section 327.375(3) by failing to carry a United States Coast Guard license aboard the vessel;

R.    Violating Florida Statues, Section 327.375(4) by failing to have a functional VHF marine transceiver and a separate electronic device capable of providing access to National Weather Service forecasts and current weather conditions;

S.    Violating Florida Statutes, Section 327.375(5) by failing to cease parasailing activities when sustained wind speeds of more than 20 mph, wind gusts of 15 mph high than sustained wind speeds, or wind speed gusts exceeding 25 mph entered the area of operation;

T.      Failing to properly train, instruct, or vet the crew aboard the *M/V Airborne*;

U.      Failing to properly train, instruct, or vet non-party Lighthouse Parasail, Inc.;

V.      Other acts of negligence not yet discovered.

131.    As a direct and proximate cause of Defendant CAPTAIN PIP'S HOLDINGS, LLC's negligence and extreme recklessness, Ak.A, a minor child, suffered severe and permanent injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and aggravation of previously existing conditions. The losses are either permanent or continuing, and Ak.A., a minor child, and will suffer losses into the future.

WHEREFORE, the Plaintiff, SRINIVASRAO ALAPARTHI, as parent and natural guardian of Ak.A, a minor child, sues the Defendant CAPTAIN PIP'S HOLDINGS, LLC, and demands judgement against him for damages exclusive of attorneys' fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

## COUNT XX

*The Plaintiff SRINIVASRAO ALAPARTHI, as parent and natural guardian of Ak.A, a minor child, claim of Negligent Infliction of Emotional Distress Against the Defendant CAPTAIN PIP'S HOLDINGS, LLC*

132.    Plaintiff readopts and realleges all allegations contained in Paragraphs 1 – 28.

133.    At all material times, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, had a duty to exercise reasonable care for the safety of passengers aboard the *M/V Airborne*, including Ak.A, a minor child, and his mother, Supraja Alaparthi. In addition, at all material times, Defendant CAPTAIN PIP'SHOLDINGS, LLC, undertook the duty and responsibility to supervise and exercise reasonable care over Ak.A, a minor child, and his mother, Supraja Alaparthi, during and after the subject parasail ride.

134.    In the alternative, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, had a duty to train, instruct, and vet the crew aboard the *M/V Airborne*, to ensure the safety of passengers aboard the *M/V Airborne*, including Ak.A, a minor child. In addition, at all material times, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, undertook the duty and responsibility to train, instruct, and vet the crew aboard the *M/V Airborne*, to ensure the safety of passengers aboard the vessel.

135.    In the alternative, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, had a duty to implement policies and procedures for parasailing activities aboard the *M/V Airborne*, to ensure the safety of passengers aboard the vessel. In addition, at all material times, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, undertook the duty and responsibility to implement policies and procedures for parasailing activities aboard the *M/V Airborne*, to ensure the safety of passengers aboard the vessel.

136.    At all material times, Defendant CAPTAIN PIP'S HOLDINGS, LLC, breached its duties to Ak.A, a minor child, by the following actions and omissions:

   A.    Failing to reasonably and properly train, instruct or supervise employees, agents, contractors, masters, officers, crew members, or seamen, including the Defendants DANIEL COUCH and TANNER HELMERS;

   B.    Allowing unqualified and untrained employees, agents, contractors, masters, officers, crew members, or seamen to operate the *M/V Airborne* and conduct parasailing activities;

   C.    Failing to reasonably and properly equip its vessel with the proper safety and parasailing equipment;

   D.    Failing to properly equip or use the available safety and parasailing equipment aboard the *M/V Airborne*;

   E.    Failing to implement reasonable and proper safety policies and procedures for its passengers and parasailers (or failing to instruct its crew of the same);

   F.    Failing to implement reasonable and proper safety policies and procedures (or failing to instruct its crew of the same) regarding emergency situations, including losing control of a parasail during a ride;

G.     Failing to provide safety instructions and briefing to its passengers and parasailers, including safety instructions and briefing concerning what to do in emergency situations (such as losing control of a parasail during a ride);

H.     Failing to check the weather conditions both before and during the subject parasailing ride;

I.     Failing to have the proper equipment aboard the *M/V Airborne* to allow the crew to check for inclement weather;

J.     Failing to properly utilize available equipment aboard the *M/V Airborne* to check the weather conditions;

K.     Operating in unsafe weather conditions, including conditions with strong and gusting winds;

L.     Failing to cease all parasailing activities when it became apparent that inclement weather was imminent;

M.     Operating while exceeding the capacity rating for the *M/V Airborne*;

N.     Cutting the towline that connected the parasail to the *M/V Airborne*;

O.     Failing to warn its passengers and parasailers of the risks of parasailing, especially of the risks of parasailing during poor or deteriorating weather conditions;

P.     Allowing its passengers and parasailers to parasail without first determining their skill level and familiarity with parasailing, without instructing its passengers and parasailers on how to release themselves from the parasail equipment in emergency situations, and without warning its passengers and parasailers of the risks associated with parasailing in inclement weather; and

Q.     Violating Florida Statues, Section 327.375(3) by failing to carry a United States Coast Guard license aboard the vessel;

R.     Violating Florida Statues, Section 327.375(4) by failing to have a functional VHF marine transceiver and a separate electronic device capable of providing access to National Weather Service forecasts and current weather conditions;

S.     Violating Florida Statutes, Section 327.375(5) by failing to cease parasailing activities when sustained wind speeds of more than 20 mph, wind gusts of 15 mph high than sustained wind speeds, or wind speed gusts exceeding 25 mph entered the area of operation;

T.     Failing to properly train, instruct, or vet the crew aboard the *M/V Airborne*;

U.     Failing to properly train, instruct, or vet non-party Lighthouse Parasail, Inc.;

V.     Other acts of negligence not yet discovered.

137.   As a direct and proximate cause of Defendant CAPTAIN PIP'S HOLDINGS, LLC's negligence and extreme recklessness, Ak.A, a minor child, suffered severe and permanent injury. In addition, as a direct and proximate cause of the Defendant CAPTAIN PIP'S HOLDINGS, LLC's negligence and extreme recklessness, Ak.A., a minor child, witnessed his mother, SUPRAJA ALAPARTHI, suffer severe injury resulting in her death and witnessed his mother's lifeless body hanging from the bridge upon impact, which alone and in combination with his own physical injury, resulted in severe and continuing emotional distress to Ak.A., a minor child.

WHEREFORE, the Plaintiff, SRINIVASRAO ALAPARTHI, as parent and natural guardian of Ak.A, a minor child, sues the Defendant CAPTAIN PIP'S HOLDINGS, LLC, and demands judgement against him for damages exclusive of attorneys' fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

## COUNT XXI

*The Plaintiff SRINIVASRAO ALAPARTHI, as parent and natural guardian of Ak.A, a minor child, claim of Vicarious Liability Against the Defendant CAPTAIN PIP'S HOLDINGS, LLC.*

138.   Plaintiff readopts and realleges all allegations contained in Paragraphs 1 – 28.

139.   At all material times, non-party Lighthouse Parasail Inc., and the Defendants DANIEL COUCH and TANNER HELMERS were agents (apparent or actual) of Defendant CAPTAIN PIP'S HOLDINGS, LLC, and therefore the Defendant CAPTAIN PIP'S HOLDINGS, LLC, is vicariously liable for any all negligence committed by them.

140.   At all material times, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, hired, contracted, authorized or otherwise entered into an agreement with non-party Lighthouse Parasail Inc., and the Defendants DANIEL COUCH and TANNER HELMERS, allowing

them to, *inter alia*, operate parasailing voyages aboard the *M/V Airborne* from the Defendant CAPTAIN PIP'S HOLDINGS, LLC's marina and resort. Accordingly, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, acknowledged that non-party Lighthouse Parasail Inc., and the Defendants DANIEL COUCH and TANNER HELMERS would act on behalf of Defendant CAPTAIN PIP'S HOLDINGS, LLC, and non-party Lighthouse Parasail Inc., and the Defendants DANIEL COUCH and TANNER HELMERS accepted the undertaking.

141.   In the alternative, at all material times, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, made representations to the general public, including the Plaintiffs, through its website, its social media accounts, signage at its resort and marina, and other fora holding non-party Lighthouse Parasail Inc. (including its employees, agents, and crew), and the Defendants DANIEL COUCH and TANNER HELMERS to be agents of the Defendant CAPTAIN PIP's HOLDINGS, LLC.

142.   At all material times, Ak.A, a minor child, his parents, and his family detrimentally relied on this agency relationship (actual or apparent) and Defendant CAPTAIN PIP'S HOLDINGS, LLC's aforementioned representations regarding the relationship between that entity and non-party Lighthouse Parasail Inc. (including its employees, agents, and crew), and the Defendants DANIEL COUCH and TANNER HELMERS in deciding to parasail with them.

143.   At all material times, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, had the right or authority to control the conduct of non-party Lighthouse Parasail Inc. (including its employees, agents, and crew), and the Defendants DANIEL COUCH and TANNER HELMERS, including but not limited to prohibiting from allowing them to operate parasailing voyages from the Defendant CAPTAIN PIP'S HOLDINGS, LLC's marina and

resort.

144.    At all material times, non-party Lighthouse Parasail Inc. (including its employees, agents, and crew), and the Defendants DANIEL COUCH and TANNER HELMERS, were acting within the course and scope of their actual or apparent authority and acting on behalf of the Defendant CAPTAIN PIP'S HOLDINGS, LLC.

145.    As set forth above and through this Complaint, non-party Lighthouse Parasail Inc. (including its employees, agents, and crew), and the Defendants DANIEL COUCH and TANNER HELMERS were negligent through the following actions and omissions:

A.    Failing to reasonably and properly train, instruct or supervise employees, agents, contractors, masters, officers, crew members, or seamen, including the Defendants DANIEL COUCH and TANNER HELMERS;

B.    Allowing unqualified and untrained employees, agents, contractors, masters, officers, crew members, or seamen to operate the *M/V Airborne* and conduct parasailing activities;

C.    Failing to reasonably and properly equip the vessel with the proper safety and parasailing equipment;

D.    Failing to properly equip or use the available safety and parasailing equipment aboard the *M/V Airborne*;

E.    Failing to implement reasonable and proper safety policies and procedures for its passengers and parasailers (or failing to instruct its crew of the same);

F.    Failing to implement reasonable and proper safety policies and procedures (or failing to instruct its crew of the same) regarding emergency situations, including losing control of a parasail during a ride;

G.    Failing to provide safety instructions and briefing to its passengers and parasailers, including safety instructions and briefing concerning what to do in emergency situations (such as losing control of a parasail during a ride);

H.    Failing to check the weather conditions both before and during the subject parasailing ride;

I.    Failing to have the proper equipment aboard the *M/V Airborne* to allow the crew to check for inclement weather;

J.    Failing to properly utilize available equipment aboard the *M/V Airborne* to check the weather conditions;

K.      Operating in unsafe weather conditions, including conditions with strong and gusting winds;

L.      Failing to cease all parasailing activities when it became apparent that inclement weather was imminent;

M.      Operating while exceeding the capacity rating for the *M/V Airborne*;

N.      Cutting the towline that connected the parasail to the *M/V Airborne*;

O.      Failing to warn its passengers and parasailers of the risks of parasailing, especially of the risks of parasailing during poor or deteriorating weather conditions;

P.      Allowing its passengers and parasailers to parasail without first determining their skill level and familiarity with parasailing, without instructing its passengers and parasailers on how to release themselves from the parasail equipment in emergency situations, and without warning its passengers and parasailers of the risks associated with parasailing in inclement weather; and

Q.      Violating Florida Statues, Section 327.375(3) by failing to carry a United States Coast Guard license aboard the vessel;

R.      Violating Florida Statues, Section 327.375(4) by failing to have a functional VHF marine transceiver and a separate electronic device capable of providing access to National Weather Service forecasts and current weather conditions;

S.      Violating Florida Statutes, Section 327.375(5) by failing to cease parasailing activities when sustained wind speeds of more than 20 mph, wind gusts of 15 mph high than sustained wind speeds, or wind speed gusts exceeding 25 mph entered the area of operation;

T.      Failing to properly train, instruct, or vet the crew aboard the *M/V Airborne*;

U.      Other acts of negligence not yet discovered.

146.    As a direct and proximate cause of the aforementioned negligence and extreme recklessness, Ak.A, a minor child, suffered severe and permanent injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and aggravation of previously existing conditions. The losses are either permanent or continuing, and Ak.A., a minor child, and will suffer losses into

the future.

WHEREFORE, the Plaintiff, SRINIVASRAO ALAPARTHI, as parent and natural guardian of Ak.A, a minor child, sues the Defendant CAPTAIN PIP'S HOLDINGS, LLC, and demands judgement against him for damages exclusive of attorneys' fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

## **COUNT XXII**

*The Plaintiffs, RAVIKUMAR SADDA and ASRITHA RAVALA, as parents and natural guardians of V.S., a minor child, claim of Negligence Against the Defendant CAPTAIN PIP'S HOLDINGS, LLC*

147.  Plaintiff readopts and realleges all allegations contained in Paragraphs 1 – 28.

148.  At all material times, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, had a duty to exercise reasonable care for the safety of passengers aboard the *M/V Airborne*, including Ak.A, a minor child. In addition, at all material times, Defendant CAPTAIN PIP'SHOLDINGS, LLC, undertook the duty and responsibility to supervise and exercise reasonable care over V.S., a minor child, during and after the subject parasail ride.

149.  In the alternative, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, had a duty to train, instruct, and vet the crew aboard the *M/V Airborne*, to ensure the safety of passengers aboard the *M/V Airborne*, including V.S., a minor child. In addition, at all material times, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, undertook the duty and responsibility to train, instruct, and vet the crew aboard the *M/V Airborne*, to ensure the safety of passengers aboard the vessel.

150.  In the alternative, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, had a duty to implement policies and procedures for parasailing activities aboard the *M/V Airborne*, to ensure the safety of passengers aboard the vessel. In addition, at all material times, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, undertook the duty and responsibility to

implement policies and procedures for parasailing activities aboard the *M/V Airborne*, to ensure the safety of passengers aboard the vessel.

151.   At all material times, Defendant CAPTAIN PIP'S HOLDINGS, LLC, breached its duties to V.S., a minor child, by the following actions and omissions:

   A.   Failing to reasonably and properly train, instruct or supervise employees, agents, contractors, masters, officers, crew members, or seamen, including the Defendants DANIEL COUCH and TANNER HELMERS;

   B.   Allowing unqualified and untrained employees, agents, contractors, masters, officers, crew members, or seamen to operate the *M/V Airborne* and conduct parasailing activities;

   C.   Failing to reasonably and properly equip its vessel with the proper safety and parasailing equipment;

   D.   Failing to properly equip or use the available safety and parasailing equipment aboard the *M/V Airborne*;

   E.   Failing to implement reasonable and proper safety policies and procedures for its passengers and parasailers (or failing to instruct its crew of the same);

   F.   Failing to implement reasonable and proper safety policies and procedures (or failing to instruct its crew of the same) regarding emergency situations, including losing control of a parasail during a ride;

   G.   Failing to provide safety instructions and briefing to its passengers and parasailers, including safety instructions and briefing concerning what to do in emergency situations (such as losing control of a parasail during a ride);

   H.   Failing to check the weather conditions both before and during the subject parasailing ride;

   I.   Failing to have the proper equipment aboard the *M/V Airborne* to allow the crew to check for inclement weather;

   J.   Failing to properly utilize available equipment aboard the *M/V Airborne* to check the weather conditions;

   K.   Operating in unsafe weather conditions, including conditions with strong and gusting winds;

   L.   Failing to cease all parasailing activities when it became apparent that inclement weather was imminent;

   M.   Operating while exceeding the capacity rating for the *M/V Airborne*;

N.     Cutting the towline that connected the parasail to the *M/V Airborne*;

O.     Failing to warn its passengers and parasailers of the risks of parasailing, especially of the risks of parasailing during poor or deteriorating weather conditions;

P.     Allowing its passengers and parasailers to parasail without first determining their skill level and familiarity with parasailing, without instructing its passengers and parasailers on how to release themselves from the parasail equipment in emergency situations, and without warning its passengers and parasailers of the risks associated with parasailing in inclement weather; and

Q.     Violating Florida Statues, Section 327.375(3) by failing to carry a United States Coast Guard license aboard the vessel;

R.     Violating Florida Statues, Section 327.375(4) by failing to have a functional VHF marine transceiver and a separate electronic device capable of providing access to National Weather Service forecasts and current weather conditions;

S.     Violating Florida Statutes, Section 327.375(5) by failing to cease parasailing activities when sustained wind speeds of more than 20 mph, wind gusts of 15 mph high than sustained wind speeds, or wind speed gusts exceeding 25 mph entered the area of operation;

T.     Failing to properly train, instruct, or vet the crew aboard the *M/V Airborne*;

U.     Failing to properly train, instruct, or vet non-party Lighthouse Parasail, Inc.;

V.     Other acts of negligence not yet discovered.

152.   As a direct and proximate cause of Defendant CAPTAIN PIP'S HOLDINGS, LLC's negligence and extreme recklessness, V.S., a minor child, suffered severe and permanent injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and aggravation of previously existing conditions. The losses are either permanent or continuing, and V.S., a minor child, and will suffer losses into the future.

WHEREFORE, the Plaintiffs, RAVIKUMAR SADDA and ASRITHA RAVALA, as parents and natural guardians of V.S., a minor child, sues the Defendant CAPTAIN PIP'S

HOLDINGS, LLC, and demand judgement against it for damages exclusive of attorneys' fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

## COUNT XXIII

*The Plaintiffs, RAVIKUMAR SADDA and ASRITHA RAVALA, as parents and natural guardians of V.S., a minor child, claim of Negligent Infliction of Emotional Distress Against the Defendant CAPTAIN PIP'S HOLDINGS, LLC*

153.  Plaintiff readopts and realleges all allegations contained in Paragraphs 1 – 28.

154.  At all material times, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, had a duty to exercise reasonable care for the safety of passengers aboard the *M/V Airborne*, including Ak.A, a minor child, and his aunt, Supraja Alaparthi. In addition, at all material times, Defendant CAPTAIN PIP'SHOLDINGS, LLC, undertook the duty and responsibility to supervise and exercise reasonable care over V.S., a minor child, and his aunt, Supraja Alaparthi, during and after the subject parasail ride.

155.  In the alternative, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, had a duty to train, instruct, and vet the crew aboard the *M/V Airborne*, to ensure the safety of passengers aboard the *M/V Airborne*, including V.S., a minor child. In addition, at all material times, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, undertook the duty and responsibility to train, instruct, and vet the crew aboard the *M/V Airborne*, to ensure the safety of passengers aboard the vessel.

156.  In the alternative, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, had a duty to implement policies and procedures for parasailing activities aboard the *M/V Airborne*, to ensure the safety of passengers aboard the vessel. In addition, at all material times, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, undertook the duty and responsibility to implement policies and procedures for parasailing activities aboard the *M/V Airborne*, to ensure the safety of passengers aboard the vessel.

157.   At all material times, Defendant CAPTAIN PIP'S HOLDINGS, LLC, breached its duties

by the following actions and omissions:

A.   Failing to reasonably and properly train, instruct or supervise employees, agents, contractors, masters, officers, crew members, or seamen, including the Defendants DANIEL COUCH and TANNER HELMERS;

B.   Allowing unqualified and untrained employees, agents, contractors, masters, officers, crew members, or seamen to operate the *M/V Airborne* and conduct parasailing activities;

C.   Failing to reasonably and properly equip its vessel with the proper safety and parasailing equipment;

D.   Failing to properly equip or use the available safety and parasailing equipment aboard the *M/V Airborne*;

E.   Failing to implement reasonable and proper safety policies and procedures for its passengers and parasailers (or failing to instruct its crew of the same);

F.   Failing to implement reasonable and proper safety policies and procedures (or failing to instruct its crew of the same) regarding emergency situations, including losing control of a parasail during a ride;

G.   Failing to provide safety instructions and briefing to its passengers and parasailers, including safety instructions and briefing concerning what to do in emergency situations (such as losing control of a parasail during a ride);

H.   Failing to check the weather conditions both before and during the subject parasailing ride;

I.   Failing to have the proper equipment aboard the *M/V Airborne* to allow the crew to check for inclement weather;

J.   Failing to properly utilize available equipment aboard the *M/V Airborne* to check the weather conditions;

K.   Operating in unsafe weather conditions, including conditions with strong and gusting winds;

L.   Failing to cease all parasailing activities when it became apparent that inclement weather was imminent;

M.   Operating while exceeding the capacity rating for the *M/V Airborne*;

N.   Cutting the towline that connected the parasail to the *M/V Airborne*;

O.   Failing to warn its passengers and parasailers of the risks of parasailing,

especially of the risks of parasailing during poor or deteriorating weather conditions;

P.    Allowing its passengers and parasailers to parasail without first determining their skill level and familiarity with parasailing, without instructing its passengers and parasailers on how to release themselves from the parasail equipment in emergency situations, and without warning its passengers and parasailers of the risks associated with parasailing in inclement weather; and

Q.    Violating Florida Statues, Section 327.375(3) by failing to carry a United States Coast Guard license aboard the vessel;

R.    Violating Florida Statues, Section 327.375(4) by failing to have a functional VHF marine transceiver and a separate electronic device capable of providing access to National Weather Service forecasts and current weather conditions;

S.    Violating Florida Statutes, Section 327.375(5) by failing to cease parasailing activities when sustained wind speeds of more than 20 mph, wind gusts of 15 mph high than sustained wind speeds, or wind speed gusts exceeding 25 mph entered the area of operation;

T.    Failing to properly train, instruct, or vet the crew aboard the *M/V Airborne*;

U.    Failing to properly train, instruct, or vet non-party Lighthouse Parasail, Inc.;

V.    Other acts of negligence not yet discovered.

158.    As a direct and proximate cause of Defendant CAPTAIN PIP'S HOLDINGS, LLC's negligence and extreme recklessness, V.S., a minor child, suffered severe and permanent injury. In addition, as a direct and proximate cause of the Defendant CAPTAIN PIP'S HOLDINGS, LLC's negligence and extreme recklessness, V.S., a minor child, witnessed his aunt, SUPRAJA ALAPARTHI, suffer severe injury resulting in her death and witnessed his mother's lifeless body hanging from the bridge upon impact, which alone and in combination with his own physical injury, resulted in severe and continuing emotional distress to V.S., a minor child.

WHEREFORE, the Plaintiffs, RAVIKUMAR SADDA and ASRITHA RAVALA, as parents and natural guardians of V.S., a minor child, sue the Defendant CAPTAIN PIP'S

HOLDINGS, LLC, and demands judgement against it for damages exclusive of attorneys' fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

## COUNT XXIV

*The Plaintiff RAVIKUMAR SADDA and ASRITHA RAVALA, as parents and natural guardians of V.S., a minor child, claim of Vicarious Liability Against the Defendant CAPTAIN PIP'S HOLDINGS, LLC.*

159.   Plaintiff readopts and realleges all allegations contained in Paragraphs 1 – 28.

160.   At all material times, non-party Lighthouse Parasail Inc., and the Defendants DANIEL COUCH and TANNER HELMERS were agents (apparent or actual) of Defendant CAPTAIN PIP'S HOLDINGS, LLC, and therefore the Defendant CAPTAIN PIP'S HOLDINGS, LLC, is vicariously liable for any all negligence committed by them.

161.   At all material times, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, hired, contracted, authorized or otherwise entered into an agreement with non-party Lighthouse Parasail Inc., and the Defendants DANIEL COUCH and TANNER HELMERS, allowing them to, *inter alia*, operate parasailing voyages aboard the *M/V Airborne* from the Defendant CAPTAIN PIP'S HOLDINGS, LLC's marina and resort. Accordingly, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, acknowledged that non-party Lighthouse Parasail Inc., and the Defendants DANIEL COUCH and TANNER HELMERS would act on behalf of Defendant CAPTAIN PIP'S HOLDINGS, LLC, and non-party Lighthouse Parasail Inc., and the Defendants DANIEL COUCH and TANNER HELMERS accepted the undertaking.

162.   In the alternative, at all material times, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, made representations to the general public, including the Plaintiffs, through its website, its social media accounts, signage at its resort and marina, and other fora holding non-party

Lighthouse Parasail Inc. (including its employees, agents, and crew), and the Defendants DANIEL COUCH and TANNER HELMERS to be agents of the Defendant CAPTAIN PIP's HOLDINGS, LLC.

163. At all material times, V.S., a minor child, his parents, and his family detrimentally relied on this agency relationship (actual or apparent) and Defendant CAPTAIN PIP'S HOLDINGS, LLC's aforementioned representations regarding the relationship between that entity and non-party Lighthouse Parasail Inc. (including its employees, agents, and crew), and the Defendants DANIEL COUCH and TANNER HELMERS in deciding to parasail with them.

164. At all material times, the Defendant CAPTAIN PIP'S HOLDINGS, LLC, had the right or authority to control the conduct of non-party Lighthouse Parasail Inc. (including its employees, agents, and crew), and the Defendants DANIEL COUCH and TANNER HELMERS, including but not limited to prohibiting from allowing them to operate parasailing voyages from the Defendant CAPTAIN PIP'S HOLDINGS, LLC's marina and resort.

165. At all material times, non-party Lighthouse Parasail Inc. (including its employees, agents, and crew), and the Defendants DANIEL COUCH and TANNER HELMERS, were acting within the course and scope of their actual or apparent authority and acting on behalf of the Defendant CAPTAIN PIP'S HOLDINGS, LLC.

166. As set forth above and through this Complaint, non-party Lighthouse Parasail Inc. (including its employees, agents, and crew), and the Defendants DANIEL COUCH and TANNER HELMERS were negligent through the following actions and omissions:

A.     Failing to reasonably and properly train, instruct or supervise employees, agents, contractors, masters, officers, crew members, or seamen, including the Defendants DANIEL COUCH and TANNER HELMERS;

B.   Allowing unqualified and untrained employees, agents, contractors, masters, officers, crew members, or seamen to operate the *M/V Airborne* and conduct parasailing activities;

C.   Failing to reasonably and properly equip the vessel with the proper safety and parasailing equipment;

D.   Failing to properly equip or use the available safety and parasailing equipment aboard the *M/V Airborne*;

E.   Failing to implement reasonable and proper safety policies and procedures for its passengers and parasailers (or failing to instruct its crew of the same);

F.   Failing to implement reasonable and proper safety policies and procedures (or failing to instruct its crew of the same) regarding emergency situations, including losing control of a parasail during a ride;

G.   Failing to provide safety instructions and briefing to its passengers and parasailers, including safety instructions and briefing concerning what to do in emergency situations (such as losing control of a parasail during a ride);

H.   Failing to check the weather conditions both before and during the subject parasailing ride;

I.   Failing to have the proper equipment aboard the *M/V Airborne* to allow the crew to check for inclement weather;

J.   Failing to properly utilize available equipment aboard the *M/V Airborne* to check the weather conditions;

K.   Operating in unsafe weather conditions, including conditions with strong and gusting winds;

L.   Failing to cease all parasailing activities when it became apparent that inclement weather was imminent;

M.   Operating while exceeding the capacity rating for the *M/V Airborne*;

N.   Cutting the towline that connected the parasail to the *M/V Airborne*;

O.   Failing to warn its passengers and parasailers of the risks of parasailing, especially of the risks of parasailing during poor or deteriorating weather conditions;

P.   Allowing its passengers and parasailers to parasail without first determining their skill level and familiarity with parasailing, without instructing its passengers and parasailers on how to release themselves from the parasail equipment in emergency situations, and without warning its passengers and parasailers of the risks associated with parasailing in inclement weather; and

Q.    Violating Florida Statues, Section 327.375(3) by failing to carry a United States Coast Guard license aboard the vessel;

R.    Violating Florida Statues, Section 327.375(4) by failing to have a functional VHF marine transceiver and a separate electronic device capable of providing access to National Weather Service forecasts and current weather conditions;

S.    Violating Florida Statutes, Section 327.375(5) by failing to cease parasailing activities when sustained wind speeds of more than 20 mph, wind gusts of 15 mph high than sustained wind speeds, or wind speed gusts exceeding 25 mph entered the area of operation;

T.    Failing to properly train, instruct, or vet the crew aboard the *M/V Airborne*;

U.    Other acts of negligence not yet discovered.

167.    As a direct and proximate cause of the aforementioned negligence and extreme recklessness, V.S., a minor child, suffered severe and permanent injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and aggravation of previously existing conditions. The losses are either permanent or continuing, and V.S., a minor child, and will suffer losses into the future.

WHEREFORE, the Plaintiffs, RAVIKUMAR SADDA and ASRITHA RAVALA, as parents and natural guardians of V.S., a minor child, sues the Defendant CAPTAIN PIP'S HOLDINGS, LLC, and demands judgement against him for damages exclusive of attorneys' fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

## **DEMAND FOR JURY TRIAL**

The Plaintiff demands a trial by jury of all issues triable as of right by a jury.

DATED: June 6, 2023

**THE HAGGARD LAW FIRM, PA**
*Attorneys for Plaintiff*

330 Alhambra Circle, First Floor
Coral Gables, Florida 33134
Telephone: 305-446-5700
Facsimile: 305-446-1154

By: /s/ *Pedro P. Echarte, III*
     PEDRO P. ECHARTE III, ESQ.
     FBN: 090454
     ppe@haggardlawfirm.com
     yrosario@haggardlawfirm.com
     aquesada@haggardlawfirm.com

**LAW FIRM OF RICKY K. PATEL**
*Attorneys for Plaintiff*
66 West Flagler Street, Suite 600
Miami, FL 33130
Telephone: 786-304-8862

By: /s/ *Ricky K. Patel*
     RICKY K. PATEL, ESQ.
     FBN: 88769
     Rpatel@floridaattorney.com